'08 CIV 5298

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CCM PATHFINDER GRAMERCY, LLC, | ) ) ) |
| Plaintiff, | ) ) ) |
| -against- | ) ) ) |
| COMPASS FINANCIAL PARTNERS LLC and COMPASS USA SPE LLC, | ) ) ) |
| Defendants. | ) ) |

08 Civ. _____

Removed from:
Supreme Court of the State of New York
County of New York

Index No. 107207/08

Date Filed: 05/22/08

CASHIERS

## NOTICE OF REMOVAL TO U.S. DISTRICT COURT, PURSUANT TO 28 U.S.C. §§ 1334 AND 1452 AND FEDERAL RULE OF BANKRUPTCY PROCEDURE 9027, OF CASE COMMENCED IN THE SUPREME COURT OF THE STATE OF NEW YORK, COUNTY OF NEW YORK ON MAY 22, 2008

Defendants Compass Financial Partners LLC and Compass USA SPE LLC hereby remove to this United States District Court for the Southern District of New York the action filed against them, on May 22, 2008, by Plaintiff CCM Pathfinder Gramercy, LLC in the Supreme Court of the State of New York, County of New York, on the grounds that the removed action has a significant connection to a confirmed chapter 11 plan, asset sale and related pending litigation commenced in chapter 11 bankruptcy cases in the United States Bankruptcy Court for the District of Nevada and that is now being adjudicated in the United States District Court for the District of Nevada. The removed action involves the same claims regarding the same property that is the subject of the litigation in the District Court in Nevada.

This Court has subject matter jurisdiction over the removed action pursuant to 28 U.S.C. § 1334(b), removal of the action is authorized under 28 U.S.C. § 1452, and, as will be explained

in Defendants' motion for transfer of venue, the interests of efficient judicial administration and avoidance of duplication and inconsistent results requires that venue of the removed action be transferred to United States District Court for the District of Nevada.

### Statement of Facts

1.    On April 13, 2006, USA Commercial Mortgage Company and four if its affiliates (collectively, the "Debtors") filed for chapter 11 relief in the U.S. Bankruptcy Court for the District of Nevada (the "Nevada Bankruptcy Court"), jointly administered case no. 06-10725 LBR (the "Nevada Bankruptcy Cases"). The Debtors were in the business of originating and servicing commercial real property loans, and raised funds by soliciting individuals and entities (together with their successors and assigns, the "Investors") to invest in fractional interests in the loans. At the time of the commencement of the Nevada Bankruptcy Cases, the Debtors were servicing 115 loans involving 3,600 Investors. Plaintiff CCM Pathfinder Gramercy, LLC ("Plaintiff") is one such Investor.

2.    Pursuant to an asset purchase agreement and a confirmed chapter 11 plan of reorganization in the Nevada Bankruptcy Cases (the "Chapter 11 Plan"), Defendants Compass Financial Partners LLC and Compass USA SPE LLC and certain of their affiliates (collectively "Compass") purchased the loan servicing rights and certain related assets from the Debtors in respect of 65 loans. Compass paid approximately $67 million (subject to certain purchase price adjustments that are the subject of pending litigation in the Nevada Bankruptcy Court). An order confirming the Chapter 11 Plan and approving the asset purchase agreement and sale to Compass was entered by the Nevada Bankruptcy Court on January 8, 2007. The sale was consummated on February 16, 2007.

3.     On May 21, 2007, certain of the Investors filed suit in the U.S. District Court for the District of Nevada (the "Nevada District Court") against Compass alleging that Compass had breached its contractual and fiduciary duties to the Investors under the loan servicing agreements with respect to the loan servicing rights Compass acquired from the Debtors under the chapter 11 Plan and asset purchase agreement. On May 25, 2007, Compass commenced litigation in the Nevada Bankruptcy Court against certain of the Investors to enjoin them from interfering with Compass' rights under the Chapter 11 Plan, the asset purchase agreement and the loan servicing agreements; and the Nevada Bankruptcy Court enjoined those Investors from further interference. Thereafter, the litigation commenced by Compass in the Nevada Bankruptcy Court was transferred (by withdrawal of the reference) to the Nevada District Court and consolidated with the litigation commenced by certain of the Investors against Compass. The consolidated actions are being actively litigated in the Nevada District Court (there are presently over 500 entries in the docket of the consolidated litigation).

4.     On May 22, 2008, Plaintiff, one of the Investors, sued Compass entities Compass Financial Partners LLC and Compass USA SPE LLC ("Defendants") for breach of the loan servicing agreements and breach of fiduciary duty in the Supreme Court of the State of New York, County of New York (the "New York State Case"). The very same loan in which Plaintiff is a participant Investor, and that is the subject of the New York State Case, is also the subject of the breach of loan servicing agreements and breach of fiduciary duty suit now pending in the Nevada District Court that was brought by certain other Investors. As a result, the claims and causes of action contained in the New York State Case are already being litigated in the Nevada District Court with respect to the same loan that Plaintiff is an Investor in.

5.    The Chapter 11 Plan that was confirmed by the Nevada Bankruptcy Court provides that the Nevada Bankruptcy Court (and hence the Nevada District Court) shall retain exclusive jurisdiction to determine all matters related to the loan servicing agreements (which is the subject matter of the New York State Case) and the asset purchase agreement, and the other rights acquired by Compass in respect of serviced loans under the Chapter 11 Plan. Both the Nevada Bankruptcy Court and the Nevada District Court have since entered orders determining that they have subject matter jurisdiction over litigation involving the interpretation and enforcement of the loan servicing agreements and other assets and rights that Compass purchased in the Nevada Bankruptcy Cases pursuant to the confirmed Chapter 11 Plan.

6.    Compass, in its capacity as servicer and pursuant to the Chapter 11 Plan, has continuing obligations to recover and turn over to the creditors trust that was created under the Chapter 11 Plan overpayments that were made by the Debtors to Investors prior to and during the Bankruptcy Cases. Hence, resolution of the litigation between Compass and the litigating Investors, including the claims brought in the New York State Case, will have a direct impact on the administration of the bankruptcy estates of the Debtors and the recovery of creditors.

### Subject Matter Jurisdiction and Removal

7.    Section 1452(a) of Title 28 of the U.S. Code grants a very broad right to parties to civil actions to remove "any claim or cause of action" to the district court (and by referral to the bankruptcy court) provided that bankruptcy jurisdiction exists under 28 U.S.C. § 1334. This United States District Court for the Southern District of New York has subject matter jurisdiction over the New York State Case because the New York State Case is a civil proceeding that arises in or is related to a case under title 11 -- the Nevada Bankruptcy Cases and the litigation pending in the Nevada District Court. The New York State Case has: (a) a close nexus to the Chapter 11

Plan and the interpretation, implementation, execution and administration of the Chapter 11 Plan; and (b) a significant connection to the litigation regarding that Chapter 11 Plan, the asset purchase agreement, injunctions that were entered against certain of the Investors, and the rights of Compass as servicer that came out of the Nevada Bankruptcy Cases and that is now pending in the Nevada District Court.

8.    Resolution of the New York State Case will require a court to interpret the Chapter 11 Plan, the asset purchase agreement and the loan servicing agreements. Resolution of the New York State Claims in the Nevada District Court together with the other consolidated litigation is the only way to avoid inconsistent results and inefficient use of judicial resources. Accordingly, Defendants shortly will file a motion for transfer of venue to the Nevada District Court.

9.    This removed action is a core proceedings under 28 U.S.C. § 157(b) in that it (a) involves rights of the Defendants established under the Chapter 11 Plan, (b) implicates an injunction entered by the Nevada Bankruptcy Court in favor of Compass and against certain of the Investors, and (c) will have a direct impact on the administration of the Debtors' estates and the recovery of creditors.

10.    If any of this removed action is determined to be a non-core proceeding, Defendants hereby consent to the entry of final orders or judgment by the bankruptcy judge with respect to any and all claims and causes of action in the removed action.

11.    Attached hereto is a copy of the complaint filed by Plaintiffs in the New York State Case. No other pleadings have been filed in that case.

WHEREFORE, Defendants Compass Financial Partners LLC and Compass USA SPE LLC respectfully request removal of this action from the Supreme Court of the State of New

York, County of New York, to the United States District Court for the Southern District of New

York.

Dated:  New York, New York
        June 10, 2008

MILBANK, TWEED, HADLEY & McCLOY LLP

By: _____

Linda Dakin-Grimm
Daniel M. Perry
Tyson M. Lomazow
1 Chase Manhattan Plaza
New York, NY  10005-1413
(212) 530-5000
*Attorneys for Defendants Compass Financial*
*Partners LLC and Compass USA SPE LLC*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| CCM PATHFINDER GRAMERCY, LLC, | ) ) ) | 08 Civ. _____ |
| Plaintiff, | ) ) ) | Removed from: Supreme Court of the State of New York County of New York |
| -against- | ) ) | |
| COMPASS FINANCIAL PARTNERS LLC and COMPASS USA SPE LLC, | ) ) ) | Index No. 107207/08 Date Filed: 05/22/08 |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2008, I caused a true and correct copy of the NOTICE

OF REMOVAL to be served by Federal Express upon the following:

> Betty M. Shumener
> Todd B. Marcus
> Robert J. Odson
> DLA Piper US LLP
> 1251 Avenue of the Americas
> New York, NY 10020
> (212) 335-4500

DATED:     June 10, 2008

By: _____

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

CCMP ATHFINDER GRAMERCY, LLC,

                                    Plaintiff,

              -against-

COMPASS FINANCIAL PARTNERS LLC,
and COMPASS USA SPE LLC,

                                    Defendants.

Index No.

Date Filed

Plaintiff designates NEW YORK
COUNTY as the place of trial

**SUMMONS**

Defendants' place of business is
333 Seventh Avenue, Third Floor,
New York, New York 10001

To the above-named Defendants:

              YOU ARE HEREBY SUMMONED to answer the complaint in this action
and serve a copy of your answer, or, if the complaint is not served with this
summons, to serve a notice of appearance, on plaintiff's attorneys within twenty
(20) days after service of this summons, exclusive of the day of service (or within
thirty (30) days after the service is complete if this summons is not personally
delivered to you within the State of New York); and in case of your failure to
appear or answer, judgment will be taken against you by default for the relief
demanded in the complaint.

Dated: New York, New York
       May 22, 2008

                              DLA PIPER US LLP

                              By

                                 Betty M. Shumener
                                 Todd B. Marcus
                                 Robert J. Odson
                              1251 Avenue of the Americas
                              New York, New York 10020
                              (212) 335-4500

                              *Attorneys for Plaintiff*
                              *CCMP ATHFINDER GRAMERCY, LLC*

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

CCM PATHFINDER GRAMERCY, LLC,                           Index No.

                                    Plaintiff,

                         against

                                                        **COMPLAINT**

COMPASS FINANCIAL PARTNERS LLC,
and COMPASS USA SPE LLC,

                                    Defendants.


        Plaintiff CCM Pathfinder Gramercy, LLC ("CCM Pathfinder"), by its attorneys, DLA

Piper US LLP, as and for its complaint against defendants Compass Financial Partners LLC and

Compass USA SPE LLC (together "Compass"), alleges as follows:


                         I.     Nature of Action

        1.      CCM Pathfinder brings this action against Compass, the loan servicer under a

$34,000,000 loan (the "Loan"), which formerly was secured by a first-priority deed of trust on a

condominium project (**the "Property"**), for breach of contract and breach of fiduciary duty, and

seeks millions of dollars in compensatory damages, exclusive of interest, costs and attorneys'

fees, in addition to declaratory relief and an accounting.

        2.      Compass has attempted to assess against CCM Pathfinder and the other lenders

under the Loan millions of dollars in late charges and default interest which Compass did not

collect from the borrower. Compass also has attempted to impose against the borrower unwarranted excessive to the point of being usurious and improperly calculated default rate of interest. Moreover, Compass has asserted priority to receive these improperly assessed late charges and default interest under the Loan, such that Compass would recover these sums before CCM Pathfinder and the other lenders would recoup the principal and contractual interest outstanding under the Loan. Finally, Compass has failed to provide timely and accurate information to CCM Pathfinder, placed Compass' interest ahead of the interests of CCM Pathfinder, and attempted to leverage its position of control into an unwarranted windfall of millions of dollars. By reason of these, and other, actions (described in greater detail herein), Compass has breached its written agreements with, and fiduciary duties to, CCM Pathfinder causing, or about to cause, CCM Pathfinder to suffer millions of dollars in damages.

## II.    Parties, Jurisdiction and Venue

3.    CCM Pathfinder is a Delaware limited liability company with its principal place of business in Connecticut.

4.    Upon information and belief, Compass Financial Partners LLC is and, at all relevant times hereinafter mentioned, was a Delaware limited liability company with its principal place of business at 333 Seventh Avenue, Third Floor, New York, New York 10001.

5.    Upon information and belief, Compass USA SPE LLC is and, at all relevant times hereinafter mentioned, was a Delaware limited liability company with its principal place of business at 333 Seventh Avenue, Third Floor, New York, New York 10001.

6.    Venue and jurisdiction lie with this Court because defendants have their principal place of business in the State of New York, County of New York.

### III.    Facts Common To All Causes Of Action

A.    The Loan Servicing Agreements

7.    Compass is the successor in interest to USA Commercial Mortgage Company ("USA"), as the loan servicer under certain Loan Servicing Agreements relating to the Loan. CCM Pathfinder is the successor lender under at least 74 of those Loan Servicing Agreements (collectively, the "Loan Servicing Agreements"). A sample form of the Loan Servicing Agreements is attached hereto as Exhibit "A" and incorporated by reference herein.

8.    As to the two forms of the Loan Servicing Agreements pertaining to CCM Pathfinder's interests at issue in this complaint, there appear to be only two substantive differences, consisting of the following: (1) the vast majority of the Loan Servicing Agreements provide for a loan servicing fee of 1% of the outstanding principal, whereas a few of the others provide for a loan servicing fee of 3% of the outstanding principal, and (2) most of the Loan Servicing Agreements provide that the servicer may also receive any late charges collected from the borrower under the Note, whereas a few of the Loan Servicing Agreements provide that the servicer may also receive any default interest and late charges collected from the borrower under the Note.

9.    Under each of the Loan Servicing Agreements, Compass is obligated to "do all things and take all actions on behalf of Lender . . . to protect Lender's interest under any note, deed of trust, guaranty, security agreement or other document pertaining to any Loan…." Specifically, Paragraph 11 of the Loan Servicing Agreements (Exhibit A) provides, in pertinent part, as follows (emphasis added):

(i)    Limited Power of Attorney.  With respect to each loan, Lender hereby agrees that USA [Compass] shall have full power and authority, and Lender hereby appoints USA [Compass] as its true and lawful attorney-in-fact to ... **do all things and take all actions on behalf of Lender** which are necessary or convenient to effectuate this Agreement and its intent **and to protect Lender's interest under any note, deed of trust, guaranty, security agreement or other document pertaining to any Loan....**

10.    Upon information and belief, on or about February 16, 2007, Compass acquired the servicing rights under the Loan Servicing Agreements.

B.    The Loan

11.    The Loan which is the subject of the Loan Servicing Agreements is evidenced by a Promissory Note Secured By Deed of Trust dated June 25, 2004, executed by Gramercy Court, Ltd. ("**Borrower**"), a Texas limited partnership, in the original principal face amount of $10,362,500 which subsequently was increased to $14,383,500 (the "**Note**").

12.    Upon information and belief, the list of the original lenders (before the principal amount of the Loan was increased and certain of the interests were assigned) is attached to the Note in a document titled, "Exhibit "A" Lenders."  A true and correct copy of the Note is attached hereto as **Exhibit "B"** and incorporated by reference herein.

13.    CCM Pathfinder acquired the interests of, and is the successor-in-interest to, at least 74 of the Exhibit A Lenders.  A true and correct copy of the list of lenders from whom CCM acquired its interests in the Loan is attached hereto as **Exhibit "C"** and incorporated by reference herein.

14.    The Note which evidences the Loan is secured by a Deed of Trust, Assignment of Rents, Security Agreement and Fixture Filing dated June 25, 2004 which was recorded in the official records of Harris County, Texas on June 30, 2004 ("**Deed of Trust**").  A true and correct

1

copy of the Deed of Trust is attached hereto as **Exhibit "D"** and incorporated by reference

herein.

14.    The Note matured on or about December 30, 2005, at which time all amounts

outstanding thereunder became immediately due and payable.

C.    Compass Demands, Without Any Basis, That CCM Pathfinder Pay Late Charges

15.    Almost immediately after Compass purchased USA's servicing rights under the

Loan Servicing Agreements, Compass began an aggressive campaign of demanding excessive

and unwarranted payments from the lenders, including CCM Pathfinder.

16.    The Loan Servicing Agreements provide that Compass is entitled to receive only

those late charges that Compass actually collects from the Borrower. Paragraph 5 of the Loan

Servicing Agreements (Exhibit A) provides, in pertinent part, as follows (emphasis added):

> Compensation to USA for Loan Servicing. Lender authorizes
> USA to retain monthly, as compensation for services performed
> hereunder, (a) one twelfth (1/12th) of its annual servicing fee ... (b)
> any late charges **collected from the Borrower** pursuant to the
> terms of the Note, and (c) any default interest collected from the
> Borrower pursuant to the terms of the Note.

17.    According to an accounting prepared by Compass and filed in the United States

District Court, District of Nevada on November 15, 2007 ("**Accounting,**"[1] a copy of which is

attached hereto as Exhibit E and incorporated by reference herein). Compass never collected any

late charges from the Borrower under the Note. A true and correct copy of the Accounting, as it

pertains to the Loan, is attached hereto as **Exhibit "E"** and incorporated by reference herein.

---

[1] Compass' Accounting pertains to many loans, most of which are not at issue in this action.
Accordingly, financial information regarding these loans have been omitted from Exhibit E such that
only information regarding the Loan appears in Exhibit E.

therefore, based upon the clear and express provisions of the Loan Servicing Agreements, Compass is not entitled to assess late charges against CCM Pathfinder or any of the other lenders.

59.     Notwithstanding the provisions of the Loan Servicing Agreements (which require Compass to collect late charges from the Borrower), Compass assessed against the lenders, including CCM Pathfinder, late charges in the amount of $2,460,229.61.

60.     As of April 8, 2008, only a few months later, Compass' claim against the lenders, including CCM Pathfinder, for late charges had increased to $2,711,502.69. Compass' attempt to improperly take late charges that were never collected from the Borrower constitutes a breach of fiduciary duty as well as a breach of the Loan Servicing Agreements.

61.     In addition to its failure to collect late charges from the Borrower, Compass, through its unilateral actions, made certain that no late charges ever could be collected from the Borrower. On or about April 1, 2008, in connection with the foreclosure of the Property, Compass purchased the Property with a "credit bid" that was more than $10,000,000 less than the principal owed to the lenders under the Note. In so doing, Compass effectively released the Borrower from its obligations under the Note. As a result, Compass neither has collected nor ever will collect any late charges from the Borrower.

D.     Compass Demands, Without Any Basis, That CCM Pathfinder Pay Default Interest

62.     Similarly, the Loan Servicing Agreements expressly provide that Compass is entitled to receive only the "default" interest that Compass actually collects from the Borrower. Paragraph 5 of the Loan Servicing Agreements provides, in pertinent part, that "[lender authorizes [Compass] to retain . . . of any default interest **collected from the Borrower** pursuant to the terms of the Note . . ." (emphasis added).

According to the Accounting, Compass never collected any default interest from the Borrower. Moreover, as a result of its unilateral foreclosure of the Property, Compass never will collect any default interest from the Borrower. Therefore, based upon the clear and express provisions of the Loan Servicing Agreements, Compass is not entitled to assess any default interest against the lenders.

According to the same Accounting, Compass discloses that, as of October 2, 2007, Compass is assessing against the lenders at least $6,359,336.72 in default interest. Moreover, as of April 8, 2008, Compass' claim for default interest had grown to $8,805,327.77. Compass' attempt to improperly take default interest that was never collected constitutes a breach of fiduciary duty as well as a breach of the Loan Servicing Agreements.

F.     Compass Wrongfully Compounded Default Interest

In addition to its egregious overreaching in assessing CCM Pathfinder and the other lenders late charges and default interest that Compass did not collect from the Borrower, Compass improperly and incorrectly computed the amount of default interest due under the Note.

Although the Note provides that interest at the non-default rate of 12% is to be compounded monthly, the Note does not provide for the compounding of default interest. Paragraph 1 of the Note (Exhibit B) provides as follows (emphasis added):

> i.   Interest Rate. Interest shall accrue on the outstanding portion of the Note Amount, from the date Lender initially disburses such funds until the date the Note Amount is paid in full, at the rate of twelve percent (12%) per annum. Interest shall be calculated on the basis of a 360-day year and actual days elapsed. **Accrued but unpaid interest shall be compounded monthly.**

Paragraph 9 of the Note to read in its entirety as follows:

> 9.    Default Rate.    From and after the Maturity Date or, if any Event of Default occurs and is not timely cured, from the date the payment was due regardless of any cure period provided in the notice of default, through and including the date that such default is cured, at the option of the Lender hereof, the amount of the unpaid payment(s), or, if the Note has been accelerated, all amounts owing under the Note and all sums owing under all of the Loan Documents shall bear interest at a default rate equal to twenty percent (20%) per annum ("Default Rate"). Such interest shall be paid on the first day of each month thereafter or on demand if sooner demanded.

28.    Notwithstanding that Paragraph 9 of the Note did not provide for compounding default interest, Compass, in violation of both the Note and the Loan Servicing Agreements, compounded default interest monthly.

F.    Compass Demands Usurious and Unwarranted Charges

29.    The Deed of Trust is governed by Texas law and the Borrower is a Texas entity.

30.    Under Texas law, a lender cannot charge its borrower interest and late charges which, in the aggregate, exceed 18%.

31.    The Note provides that if the Note bears an unlawful rate of interest, it shall be reduced to the lawful rate, as follows:

> It is the specific intent of the Borrower and Lender that this Note bear a lawful rate of interest, and if any court of competent jurisdiction should determine that the rate herein provided for exceeds that which is statutorily permitted for the type of transaction evidenced hereby, the interest rate shall be reduced to the highest rate permitted by applicable law.

32.    A court of competent jurisdiction already has decided that the default interest and late charges assessed by Compass under the Note are usurious as a matter of law.

33.    In violation of Texas law and the Note, Compass continues to claim 8% in default interest over and above the 12% in non-default interest, plus 5% in late charges. Thus, even if

8

Compass had collected any late charges or default interest from the Borrower (and it has not done so and never will do so, given the consensual foreclosure) under Texas law, Compass would have been entitled to collect only 6%, in default interest over the 12%, in non-default interest, and would not have been entitled to collect any late charges at all.

__. Under Texas law, a provision in a note providing for a late charge imposed on the outstanding principal balance of the loan, whether by reason of acceleration or maturity, is considered to be a claim for liquidated damages and unreasonable unless bearing a relationship to the costs actually incurred in the collection of the amounts outstanding.

35. Paragraph 11 of the Note provides, in pertinent part, that "Borrower agrees to pay all costs of collection." (Exhibit B.)

36. Because Compass recovers separately the costs of collection, the 5% late charge bears no relationship to the costs incurred and would be deemed an unreasonable penalty.

G. Compass Wrongfully Asserts Priority

37. In addition to the wrongful demands that Compass made for millions of dollars in improper late charges and default interest, Compass is placing its interests before the interests of the lenders Compass is obligated to protect, including CCM Pathfinder, by claiming the right to receive these improper assessments, in addition to its share of the outstanding principal, before CCM Pathfinder or any of the other lenders recover any of the principal and interest owed to them.

38. The Loan Servicing Agreements contemplate that any amounts recovered will be paid first to principal, then to interest, then to late charges and then to other fees. Paragraph 3(a)(ii) of the Loan Servicing Agreements (Exhibit A) requires Compass to do the following:

Until the total amount due under each note is paid in full:

(i) Proceed diligently to collect all payments due under the terms of the note and promptly pay the proper parties, when and if due, principal, interest, late charges, insurance and other specified funds.

Thus, according to the Loan Servicing Agreements that were drafted by USA, Compass' predecessor, the parties contemplated that principal would be paid first — which is fair, on its face — then interest, followed by late charges, then insurance and then other specified funds.

Indeed, paragraph 5 of the Loan Servicing Agreements acknowledges that the loan servicing fees, late charges and default interest are merely additional payments that Compass may receive because Compass derives the "bulk of its revenues from charging loan fees ('points') to the Borrower." Paragraph 5 of the Loan Servicing Agreements (Exhibit A) provides, in pertinent part, as follows (emphasis added):

5. Compensation to USA for Loan Servicing. Lender authorizes USA [Compass] to retain (a) _____ (5%) per annum of the maximum principal amount of each of the Loans; (b) any late charges collected from the Borrower pursuant to the terms of the Note; and (c) any default interest collected from the Borrower pursuant to the terms of the Note. **Notwithstanding the foregoing, it is agreed and acknowledged that USA [Compass] derives the bulk of its revenues from charging loan fees ("points") to the Borrower....**

Thus, Compass cannot claim that it is entitled to priority of payment from any term or provision of the Loan Servicing Agreements. To the contrary, the only rational implication that can be derived from the language of the Loan Servicing Agreements is that

principal is paid first to all the lenders, which include both CCM-Pathfinder and Compass, not default interest or late charges to Compass alone.

12.    Compass claims that it is entitled to have any amounts recovered under the Note applied first to the payment of its late charges and default interest because the lenders under the Note have the discretion to apply the funds recovered in this manner.  Thus, Compass relies on paragraph 4 of the Note (Exhibit B), which provides in the entirety as follows (emphasis added):

> 4.    Application of Payments.  All payments on this
> Note shall, **at the option of the Lender hereof**, be applied first to
> the payment of accrued interest then payable.

13.    First, the Note does not allow any of the payments collected to be applied to Late Charges before applying such payments to principal or interest.  Second, the Note allows payments to be applied "first to the payment of accrued interest," not merely to default interest. Accordingly, under the Note and at a minimum, such payments would be applied *pari passu* to all accrued interest.  Third, the "Lender" under the Note is CCM-Pathfinder (and the other lenders), not Compass in its capacity as loan servicer.  The Lender under the Note, however, would not exercise the option to benefit Compass with late charges and default interest at the expense of the principal they had funded for the Note and the interest that had accrued on that principal.

14.    Indeed, the only provision that might have extended the right to Compass to act as CCM-Pathfinder's attorney-in-fact with respect to CCM-Pathfinder's rights as a "Lender" under the Note is the very provision in paragraph 11 ("Limited Power of Attorney") of the Loan Servicing Agreements that requires Compass "to do all things and take all actions on behalf of Lender ... to protect Lender's interest under the note" (Exhibit A).  Thus, either the option is

held by CCM Pathfinder to determine whether to apply amounts recovered under the Note to default interest before principal, and CCM Pathfinder could not exercise its option to do so, or Compass is bound by its obligation to protect Lender's interest under the note to refrain from exercising that option. In either event, Compass is not entitled to place its interests ahead of CCM Pathfinder and the other lenders under the Loan Servicing Agreements or under any of the documents evidencing or securing the Loan.

45. By reason of the foregoing, Compass cannot claim priority over CCM Pathfinder and the other lenders to the payment of default interest and late charges, as neither have been collected from the Borrower.

H.    Compass Fails To Provide Information And Fails To Properly Manage The Property

46. While Compass was demanding that it be paid millions of dollars in late charges and default interest before CCM Pathfinder recovered any of its principal and interest under the Loan, Compass failed to disclose material information regarding the Loan and Property to CCM Pathfinder.

47. On or about April 3, 2007, the Borrower under the Loan sought bankruptcy protection in the United States Bankruptcy Court, Southern District of Texas ("**Bankruptcy Case**"). Throughout the course of the Bankruptcy Case, Compass failed to provide adequate or timely reports of the progress of that case to CCM Pathfinder, even though Compass was purportedly representing CCM Pathfinder's interests pursuant to the Limited Power of Attorney in the Loan Servicing Agreements. Ultimately, on or about March 7, 2008, the Bankruptcy Court granted leave for the Deed of Trust to be foreclosed, and the foreclosure sale was completed on April 1, 2008. Although CCM Pathfinder's interests in the Loan were being

foreclosed. Compass did not consult CCM Pathfinder regarding the amounts to "credit" bid at the foreclosure sale.

48.    At the foreclosure sale, Compass unilaterally "credit" bid a portion of the Loan, purchased the Property, and then took title in name of CFP Gramercy SPE LLC — a limited liability company that Compass controlled and in which CCM Pathfinder is not afforded any ownership interest. Thereafter, Compass and CFP Gramercy SPE LLC failed to take reasonable steps to (i) manage the Property, (ii) ensure that the Property is fully leased, (iii) identify and resolve deferred maintenance issues (even when offered financing by CCM Pathfinder to do so) and (iv) market and sell the Property through a qualified third party broker. Moreover, Compass and CFP Gramercy SPE LLC failed to provide timely and adequate information regarding the Property to CCM Pathfinder, while, at the same time, contending that CCM Pathfinder was obligated to pay "loan" servicing fees under the Loan Servicing Agreement (even though the Loan was extinguished as of April 1, 2008).

## FIRST CAUSE OF ACTION
### (Breach of Contract)

49.    CCM Pathfinder repeats and realleges, as if set forth here in full, the allegations contained in paragraphs 1 through 48 hereof.

50.    CCM Pathfinder and Compass are parties to the Loan Servicing Agreements.

51.    Under the Loan Servicing Agreements, Compass was required "to do all things and take all actions on behalf of Lender . . . and to protect Lender's interest under any note, deed of trust . . . or other document pertaining to the Loan."

52.     Compass breached and repudiated the Loan Servicing Agreements by, among other things: (1) wrongfully demanding excessive late charges; (2) wrongfully demanding excessive default interest which is not authorized by the terms of the Note; (3) repudiating its obligations by clearly stating its intention to pay itself late charges and default interest before paying CCM Pathfinder the principal and interest due under the Loan; and (4) failing to protect the interests of CCM Pathfinder in the Loan and the Property.

53.     As a result of Compass' self-dealing and breaches of the Loan Servicing Agreements, CCM Pathfinder has received nothing on account of the Loan since the maturity thereof and has been damaged in an amount to be determined at the trial of this action.

54.     All conditions precedent to bringing this action have occurred, been performed, or have otherwise been waived.

## SECOND CAUSE OF ACTION
### (Breach of Fiduciary Duty)

55.     CCM Pathfinder repeats and realleges, as if set forth here in full, the allegations contained in paragraphs 1 through 54 hereof.

56.     At all relevant times, Compass, as loan servicer and attorney in fact, owed to CCM Pathfinder a fiduciary duty and undivided loyalty.

57.     Compass had a duty, among other things, to act in CCM Pathfinder's best interest and to protect CCM Pathfinder's interest and position with respect to the Loan.

58.     Compass breached and repudiated its fiduciary duties to CCM Pathfinder by, among other things: (1) wrongfully charging excessive late charges and default interest, in an effort to benefit itself at the expense of CCM Pathfinder; (2) failing to protect adequately the

14

additional sums to the Loan, and to keep CCM Pathfinder apprised of same, (4) failing to protect deposits in the Property of Borrower's lease covenant and to keep CCM Pathfinder apprised of same and (5) failing to disclose to CCM Pathfinder adequate information regarding the Loan and the Property, despite repeated requests for such information.

59.    As a direct and proximate result of Compass' breach and repudiation of its fiduciary duties to CCM Pathfinder, CCM Pathfinder has been damaged in an amount to be determined at trial.

60.    In doing the acts alleged herein, Compass conspired to and did act with oppression, fraud and malice, entitling CCM Pathfinder to an award of punitive damages in an amount to be ascertained at trial.

## THIRD CAUSE OF ACTION
### (Declaratory Relief)

61.    CCM Pathfinder repeats and realleges, as if set forth here in full, the allegations contained in paragraphs 1 through 60 hereof.

62.    CCM Pathfinder has a present, practical need for a declaration of its rights under the Loan Servicing Agreements.

63.    Based on the facts set forth above, a question or controversy exists as to whether Compass may (i) pay itself late charges never collected from the Borrower, (ii) pay itself default interest never collected from the Borrower, (iii) pay itself default interest that has been compounded, (iv) pay itself late charges and/or default interest that is usurious or unreasonable under applicable law, or (v) pay itself late charges or default interest before applying any amounts to principal and interest due under the Note.

64.    CCM Pathfinder is directly and substantially harmed by Compass' failure to perform its duties as required by the Loan Servicing Agreements. Compass has undertaken conduct in disregard of the terms of the Loan Servicing Agreements and Note and in disregard of the rights of CCM Pathfinder thereunder, at law and in equity.

65.    Without a declaration of their rights and obligations, the controversy between the parties persists and the parties are uncertain as to their rights and obligations under the Loan Servicing Agreements and Loan.

## FOURTH CAUSE OF ACTION
### (Accounting)

66.    CCM Pathfinder repeats and realleges, as if set forth here in full, the allegations contained in paragraphs 1 through 65 hereof.

67.    Pursuant to the Loan Servicing Agreements, and based on, among other things, the fiduciary duties owed by Compass to CCM Pathfinder, CCM Pathfinder is entitled to an accounting of all payments, interests, late charges, penalties, and any other receipts or disbursements related to Loan as well as all rents, income, proceeds and any other receipts or disbursements related to the Property.

68.    Notwithstanding Compass's obligations with respect thereto, and CCM Pathfinder's requests therefor, Compass has failed and refused to provide CCM Pathfinder with a complete accounting, copies of books and records or access to inspect and copy the books and records relating to the Loan and the Property.

WHEREFORE, CCM Pathfinder demands judgment as follows:

(a)     awarding damages, including punitive damages and pre-judgment interest, to be determined at or before the trial of this action;

(b)     a declaration that Compass is (i) prohibited from paying itself late charges never collected from the Borrower, (ii) prohibited from paying itself default interest never collected from the Borrower, (iii) prohibited from compounding default interest, (iv) prohibited from paying itself late charges and/or default interest that is usurious or unreasonable under applicable law, (v) obligated to pay the principal and interest due CCM Pathfinder before paying itself late charges and default interest, (vi) obligated to diligently protect the collateral securing the Loan, and (vii) obligated to diligently apprise CCM Pathfinder of the status and condition of the Loan and the Property and the conduct of Compass with respect thereto;

(c)     judgment directing Compass to provide an accounting of the Loan and the Property;

(d)     awarding to CCM Pathfinder its costs and expenses, including attorneys' fees incurred herein; and

(e)     granting such other and further relief as is just and proper.

Dated:  New York, New York
        May 22, 2008

DLA PIPER US LLP

By: _____
    Betty M. Shumener
    Todd B. Marcus
    Robert J. Odson

1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500

Attorneys for Plaintiff
CCM PATHFINDER OR IMPERO LLC