UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

CCM PATHFINDER POMPANO BAY, LLC,  Case No.  08 CIV 5258

     Plaintiff,

  -against-

COMPASS FINANCIAL PARTNERS LLC and
COMPASS USA SPE LLC,

     Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

CCM PATHFINDER GRAMERCY, LLC,  Case No.  08 CIV 5297

     Plaintiff,

  -against-

COMPASS FINANCIAL PARTNERS LLC and
COMPASS USA SPE LLC,

     Defendants.
--------------------------------------------------------X

CCM PATHFINDER POMPANO BAY, LLC,  Case No.  08 CIV 5298

     Plaintiff,

  -against-

COMPASS FINANCIAL PARTNERS LLC and
COMPASS USA SPE LLC,

     Defendants.
--------------------------------------------------------X

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF PLAINTIFFS' MOTION FOR REMAND

**DLA PIPER US LLP**
**1251 Avenue of the Americas**
**New York, NY  10020**
**(212) 335-4500**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ....................................................................................1

II. FACTS ....................................................................................................4

    A.   The Three Loans ...........................................................................4

    B.   Compass Purchases Debtor's Loan Servicing Rights ...........................5

    C.   Compass's Breaches of the Loan Servicing Agreements .....................5

    D.   Compass Is Negligent In Servicing The Loan.................................9

    E.   Procedural History .....................................................................11

III. ARGUMENT .........................................................................................11

    A.   Burden of Proof .........................................................................11

    B.   Confirmation Of The Plan Divested The Bankruptcy Court Of Jurisdiction.......11

    C.   The Court Should Remand Pursuant To Mandatory Abstention........................12

    D.   The Court Should Remand Pursuant To Permissive Abstention........................19

    E.   The Bankruptcy Court Lacks "Related To" Jurisdiction And Did Not Retain "Exclusive Jurisdiction" Over "All Matters" Regarding The Loan Servicing Agreements ...................................................................22

IV. CONCLUSION ......................................................................................25

<img src="dot" />

# TABLE OF AUTHORITIES

Page

## Cases

28 U.S.C. § 1334 ................................................................................................... passim

Allied Mechanical & Plumbing Corp. v. Dynamic Hostels Housing Dev. Fund Co.,
  62 B.R. 873 (S.D.N.Y.1986) .......................................................................... 16

Atanasio v. Brotherhood of Locomotive Engineers & Trainmen, 424 F.Supp.2d 476 (E.D.N.Y.
  2006) ................................................................................................................ 4

Bank of Louisiana v Craig's Stores (In re Craig's Stores),
  266 F.3d 388 (5th Cir. 2001) ......................................................................... 12

Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc. )
  372 F.3d 154 (3d Cir. 2004) ........................................................................... 12

Bondi v. Grant Thornton Int'l,
  322 B.R. 44 (S.D.N.Y. 2005) .......................................................................... 13

Burger Boys, Inc. v. South Street Seaport L. P. (In re Burger Boys, Inc.),
  183 B.R. 682 (S.D.N.Y. 1994) ........................................................................ 16

Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.,
  337 B.R. 22 (S.D.N.Y. 2005) ........................................................... 13, 17, 18

Chille v. United Airlines,
  304 F.Supp.2d 466 (W.D.N.Y. 2004) ............................................................ 11

Cody, Inc. v. Town of Orange (In re Cody, Inc.),
  281 B.R. 182 (S.D.N.Y. 2002) ....................................................................... 19

Covanta Onondaga Ltd. v. Onondaga County Resource Recovery Agency,
  281 B.R. 809 (N.D.N.Y. 2002) ...................................................................... 16

Falise v. American Tobacco Co.,
  241 B.R. 48 (E.D.N.Y. 1999) ......................................................................... 11

Goodman v. Phillip R. Curtis Enters., Inc.,
  809 F.2d 228 (4th Cir. 1987) ......................................................................... 12

Grupo Dataflux v. Atlas Global Group, L.P.,
  541 U.S. 567 (2004) ....................................................................................... 17

Handelsman v. Bedford Village Assoc. Ltd. Partnership,
  213 F.3d 48 (2d Cir. 2000) ............................................................................. 17

ICCO Design/Build, Inc. v. Sunbrite Cleaners, Inc. (In re Sunbrite Cleaners, Inc.),
  284 B.R. 336 (N.D.N.Y. 2002) ...................................................................... 22

In re Almac's, Inc.,
  202 B.R. 648 (D.R.I. 1996) ............................................................................ 22

In re Craig's Stores of Texas, Inc.,
  266 F.3d 388 (5th Cir.2001) ........................................................................... 22

In re Fairfield Cmtys., Inc.,
  142 F.3d 1093 (8th Cir.1998) ......................................................................... 22

In re Gordon Sel-Way, Inc.,
  270 F.3d 280 (6th Cir.2001) ........................................................................... 22

## TABLE OF AUTHORITIES
### (continued)

Page

*In re Johns-Manville Corp.*,
   7 F.3d 32 (2d Cir.1993) ...................................................................................... 12, 22

*In re U.S.H. Corp. of New York*,
   280 B.R. 330 (Bankr. S.D.N.Y. 2002) .............................................................. 22

Int'l Asset Recovery Corp. v. Thomson McKinnon Sec., Inc.,
   335 B.R. 520 (S.D.N.Y. 2005) ........................................................................... 12

Int'l Asset, 335 B.R. at 526 ................................................................................. 12

Linardos v. Fortuna,
   157 F.3d 945 (2d Cir. 1998)) ............................................................................ 11

Marcella v. Capital Dist. Physicians' Health Plan, Inc.,
   293 F.3d 42 (2d Cir. 2002) ............................................................................... 11

McCarthey Investments, LLC v. Shah,
   2007 WL 3254418 (S.D.N.Y.) .......................................................................... 16

Montana v. Goldin (In re Pegasus Gold Corp.),
   394 F.3d 1189 (9th Cir. 2005) .......................................................................... 12

Mt. McKinley Ins. Co. v. Corning Inc.,
   399 F.3d 436 (2d Cir. 2005) .............................................................. 13, 15, 19

Orion Pictures Corp. v. Showtime Networks, Inc.,
   4 F.3d 1095 (2d Cir. 1993) ............................................................................... 16

Penthouse Media Group v. Guccione (In re Gen. Media, Inc.),
   335 B.R. 66 (Bankr. S.D.N.Y. 2005) ............................................................... 11

*Presidential Gardens Assocs.*
   175 F.3d 132 (2d Cir. 1999) ............................................................................. 22

Rahl v. Bande,
   316 B.R. 127 (S.D.N.Y. 2004) ......................................................................... 12

*Southwest Marine, Inc. v. Danzig*,
   217 F.3d 1128 (9th Cir.2000) ........................................................................... 22

Stoe v. Flaherty,
   436 F.3d 209 (3d Cir. 2006) ............................................................................. 13

Studebaker-Worthington Leasing Corp. v. Michael Rachlin & Co., 357 F.Supp.2d 529 (E.D.N.Y.
   2004) ..................................................................................................................... 4

Vera v. Saks & Co., 335 F.3d 109 (2d Cir.2003)) ............................................... 4

Vornado Realty Trust v. The Stop & Shop Supermarket Cos. (In re Bradlees, Inc.),
   2005 WL 106794 (S.D.N.Y.) ...................................................................... 16, 18

NEWY1\8255269.1

## TABLE OF AUTHORITIES
### (continued)

Page

**Statutes**

22 NYCRR § 202.19(b) ...................................................................................... 18
28 U.S.C. § 1331 ................................................................................................. 4
28 U.S.C. § 1332(a)(1) ....................................................................................... 17
28 U.S.C. § 1334 ................................................................................... 12, 22, 24
28 U.S.C. § 1334(b) ........................................................................................... 22
28 U.S.C. § 1334(b) and § 1452 .......................................................................... 3
28 U.S.C. § 1334(c)(1) ....................................................................................... 19
28 U.S.C. § 1334(c)(1) and § 1452 ...................................................................... 3
28 U.S.C. § 1441(b) ........................................................................................... 17
28 U.S.C. § 157(b)(2) ................................................................................. 14, 15
28 U.S.C. §§ 1334(c)(2) and 1452 ....................................................................... 3

NEWY1\8255269.1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
CCM PATHFINDER POMPANO BAY, LLC,              Case No.  08 CIV 5258

                    Plaintiff,
        -against-

COMPASS FINANCIAL PARTNERS LLC and
COMPASS USA SPE LLC,

                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
CCM PATHFINDER GRAMERCY, LLC,                 Case No.  08 CIV 5297

                    Plaintiff,
        -against-

COMPASS FINANCIAL PARTNERS LLC and
COMPASS USA SPE LLC,

                    Defendants.
-------------------------------------------------------X
CCM PATHFINDER POMPANO BAY, LLC,              Case No.  08 CIV 5298

                    Plaintiff,
        -against-

COMPASS FINANCIAL PARTNERS LLC and
COMPASS USA SPE LLC,

                    Defendants.
-------------------------------------------------------X

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF PLAINTIFFS' MOTION FOR REMAND

## I.     INTRODUCTION

        The underlying actions ("State Actions") arise out of the contractual and fiduciary rights

of plaintiffs CCM Pathfinder Pompano Bay, LLC and CCM Pathfinder Gramercy, LLC

(collectively, "Pathfinder") and the obligations of defendants Compass Financial Partners LLC

and Compass USA SPE LLC (collectively, "Compass") under certain loan servicing agreements.

According to Compass' Notice of Removal, USA Commercial Mortgage Company ("Debtor") was "in the business of originating and servicing commercial real property loans, and raised funds by soliciting individuals and entities … to invest in fractional interests in the loans." (Declaration of Todd Marcus filed concurrently herewith ("Marcus Decl."), Exs. B, D, & E, ¶1.) With respect to each of the three loans at issue in the State Actions, Debtor entered into separate loan servicing agreements with hundreds of individuals who collectively funded the loans.

On April 13, 2006, Debtor filed bankruptcy (Chapter 11) in the United States Bankruptcy Court for the District of Nevada ("Nevada Bankruptcy Court"). On January 8, 2007, the Nevada Bankruptcy Court entered an Order Confirming the Debtors' Third Amended Plan of Reorganization ("Plan"), pursuant to which Compass acquired Debtor's rights under the loan servicing agreements and began servicing the loans. Subsequently, Compass breached the contractual and fiduciary duties owed to Pathfinder by, among other things:

    (a)    refusing a borrower's offer to pay off a loan (without notifying Pathfinder of the offer), and assessing late charges and default interest that Compass was never entitled to collect;

    (b)    using tortured interpretations of the loan servicing agreements to assert that unconscionable late charges and default interest should be paid to Compass before any principal or interest is repaid to Pathfinder;

    (c)    allowing junior lienholders to initiate foreclosure and receivership proceedings to seize rents and other income constituting Pathfinder's security;

    (d)    refusing to provide Pathfinder with material information regarding the loans; and

    (e)    allowing condominium units constituting Pathfinder's security to be sold without obtaining any of the millions of dollars in sales proceeds paid for those units.

On May 20, May 22, and June 5, 2008, Pathfinder filed in the Supreme Court of the State of New York (the "State Court") three complaints relating to three separate loans, and asserting the following state law causes of action: (1) Breach of Contract, (2) Breach of Fiduciary Duty, (3) Declaratory Relief, (4) Negligence, and (5) Accounting. Compass removed the State Actions

under 28 U.S.C. § 1334(b) and § 1452, claiming the State Actions purportedly "arise in or are related to" Debtor's bankruptcy case.  As demonstrated below, Compass' claim is without merit and the State Actions should be remanded back to State Court for the following reasons, among others.

First, the confirmation of Debtor's Plan divested the Nevada Bankruptcy Court of jurisdiction.  Second, regardless of whether jurisdiction is proper, the State Actions are subject to "mandatory abstention" and remand under 28 U.S.C. §§ 1334(c)(2) and 1452 because they involve state law claims between non-debtor parties that have no impact on the Debtor's estate. Second, there exists no diversity of jurisdiction, as all parties are citizens of New York, and the State Actions can be timely adjudicated in State Court.

Third, even if the State Actions "arise in or are related to" the administration of Debtor's estate (and they do not and are not), they are subject to "permissive abstention" and remand under 28 U.S.C. § 1334(c)(1) and § 1452 because (a) they involve only state law claims between non-debtor parties, (b) all parties are New York citizens, and there is no independent basis for federal jurisdiction, (c) Pathfinder is entitled to a jury trial which is unavailable in the Nevada Bankruptcy Court (to which Compass seeks to transfer the actions), and (d) comity favors allowing the State Actions to remain in State Court where Pathfinder elected to bring them.

Lastly, Compass' assertion that the Nevada Bankruptcy Court retained "exclusive jurisdiction to determine all matters related to the loan servicing agreements" is incorrect.  The Nevada Bankruptcy Court retained jurisdiction over disputes relating to **section 3** of the loan servicing agreements regarding the **termination of Compass as loan servicer**.  The State Actions do not seek to terminate Compass under the loan servicing agreements.  Rather, Pathfinder seeks damages and an injunction against Compass for breaching the loan servicing

agreements. The Nevada Bankruptcy Court did not retain jurisdiction over such claims.

## II.    FACTS

### A.    The Three Loans

Gramercy Court, Ltd. ("Gramercy") obtained a $10,462,500 loan, later increased to $34,384,500 ("Gramercy Loan"), from numerous lenders ("Gramercy Lenders"), as evidenced by a promissory note dated June 25, 2004 ("Gramercy Note"), secured by a first-priority mortgage on a condominium project in Texas. Debtor, as loan servicer, entered into a separate loan servicing agreement (each, a "Loan Servicing Agreement") with each of the Gramercy Lenders.[1]

Bay Pompano Beach, LLC ("Bay Pompano") obtained a $32,000,000 loan ("Bay Pompano Loan") funded by 391 lenders ("Bay Pompano Lenders"), as evidenced by a promissory note dated June 20, 2005 ("Bay Pompano Note"), secured by a first-priority mortgage on a condominium conversion project in Broward County, Florida. Debtor, as loan servicer, entered into a separate Loan Servicing Agreement with each of the 391 Bay Pompano Lenders.

Palm Harbor One, LLC ("Palm Harbor") obtained a $29,000,000 loan ("Palm Harbor Loan") funded by 292 lenders (each, a "Palm Harbor Lender"), as evidenced by a promissory note dated November 28, 2005 ("Palm Harbor Note"), secured by a first-priority mortgage on a condominium conversion project in Pinellas County, Florida. Debtor, as loan servicer, entered

---

[1]    The facts alleged in the State Court Actions constitute the operative facts. Studebaker-Worthington Leasing Corp. v. Michael Rachlin & Co., 357 F.Supp.2d 529, 533-35 (E.D.N.Y. 2004) ("The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the **face of the plaintiff's properly pleaded complaint**.... It is well-established that the well-pleaded complaint rule applies both to federal question jurisdiction under 28 U.S.C. § 1331, and to bankruptcy jurisdiction under 28 U.S.C. § 1334, the latter upon which Defendant relies.") (citations omitted) (emphasis added); Atanasio v. Brotherhood of Locomotive Engineers & Trainmen, 424 F.Supp.2d 476, 479 (E.D.N.Y. 2006) ("Because a decision on a **motion to remand relies on the facts pleaded** at the time of the petition for removal, the **facts below are taken from the complaint**.") (citing Vera v. Saks & Co., 335 F.3d 109, 116 n. 2 (2d Cir.2003)) (emphasis added).

into a separate Loan Servicing Agreement with each of the 292 Palm Harbor Lenders.

### B.    Compass Purchases Debtor's Loan Servicing Rights

On April 11, 2006, Debtor filed bankruptcy (Chapter 11) in the Nevada Bankruptcy Court.   On February 16, 2007, Compass purchased, among other things, Debtor's rights to service the Gramercy Loan, the Bay Pompano Loan, and the Palm Harbor Loan (collectively, the "Loans") under the Loan Servicing Agreements pursuant to an Order of the Nevada Bankruptcy Court Confirming the Debtors' Third Amended Plan of Reorganization.  (Marcus Decl., Ex. H.)

Pathfinder acquired the interests of at least 74 Gramercy Lenders, at least 83 Bay Pompano Lenders (representing over 21% of the Bay Pompano Loan), and at least 80 Palm Harbor Lenders (representing over 27% of the Palm Harbor Loan), and is the successor in interest and assignee of those Gramercy Lenders, Bay Pompano Lenders, and Palm Harbor Lenders (collectively, "Lenders") under the Loan Servicing Agreements.

### C.    Compass' Breaches of the Loan Servicing Agreements.

#### 1.    Compass breaches section 11 of the Loan Servicing Agreements.

The Bay Pompano Note matured on June 20, 2006, at which time all amounts outstanding under the Bay Pompano Note became immediately due and payable.  In February 2007, the borrower (Bay Pompano) offered to pay off the Bay Pompano Note – including a $320,000 exit fee – provided Compass ceased to insist upon the payment of exorbitant compounded default interest and late charges, which Compass had improperly assessed.  As explained in sections C-2 and C-3, infra, Compass is not allowed to assess such compounded default interest or late charges under the terms of the Bay Pompano Note.  Thus, Compass should have accepted Bay Pompano's offer.

Without notifying any of the Bay Pompano Lenders, Compass unilaterally rejected the borrower's offer and, instead, imposed outrageous late charges and default interest, even though

the exit fee (which Compass is not otherwise entitled to receive) may have been sufficient to discharge both the default interest and late charges, had Compass assessed proper amounts in the first place. By these over-reaching tactics, Compass breached, among others, section 11 of the Loan Servicing Agreements, which provides, in pertinent part, as follows:

> 11.    Limited Power of Attorney.   With respect to each loan, Lender hereby agrees that [Compass] shall have full power and authority, and Lender hereby appoints [Compass] as its true and lawful attorney-in-fact to … **do all things and take all actions on behalf of Lender** which are necessary or convenient to effectuate this Agreement and its intent and **to protect Lender's interest under any note, deed of trust, guaranty, security agreement or other document pertaining to any Loan**….

By rejecting the borrower's offer to pay off the Bay Pompano Loan, without even notifying Pathfinder, Compass failed "to do all things and take all actions on behalf of Lender … and to protect Lender's interest under any note, deed of trust … or other document pertaining to any Loan." As a result, Compass breached its fiduciary and contractual duties to Pathfinder under the Loan Servicing Agreements.

Similarly, even though the Palm Harbor Loan has been in default since at least December 2006, Compass failed to protect Pathfinder's rights under the Palm Harbor Loan. Compass allowed the borrower to remain in default for one and one half years, without enforcing any remedies, so that default interest and late charges would accrue under the Loan, which Compass wrongly claims are payable to itself before principal and interest are repaid to Pathfinder.[2]

### 2.    Compass breaches section 5 of the Loan Servicing Agreements.

After the Bay Pompano Note matured, Compass assessed hundreds of thousands of dollars in improper and excessive late charges which the Bay Pompano Note prohibits. When the Bay Pompano Note matured, there were only $9,651.20 in late charges outstanding. However, when the borrower failed to pay off the entire outstanding balance of the Bay

---

[2]      Compass engaged in similar acts with respect to the Gramercy Loan.

Pompano Loan at maturity, Compass imposed a five percent (5%) late charge, in the amount of $750,145.58, **on the total amount due under the Bay Pompano Note**, purporting that such amount is payable to Compass before any principal and interest are repaid to Pathfinder. Section 5 of the Loan Servicing Agreements provides, in pertinent part:

> 5.    <u>Compensation to USA for Loan Servicing</u>.  Lender authorizes [Compass] to retain ... (b) **any late charges collected from the Borrower pursuant to the terms of the Note**....[3]

However, the "terms of the Note," expressly prohibit Compass from assessing a late charge on the total amount due under the Bay Pompano Note after maturity.

Section 8 of the Bay Pompano Note provides, in pertinent part, as follows:

> 8.    <u>Late Charge</u>.  ... Notwithstanding anything to the contrary contained in this Note, **this five percent (5%) late charge** will apply to any monthly interest payment that is not made when due and **will not apply to the total amount due under this Note if this Note is** accelerated as permitted by this Note or any other Loan Document or **not paid on the maturity date.**

Although the five percent (5%) late charge was to apply only to delinquent "monthly interest payments" due under the Bay Pompano Note prior to the maturity date, Compass assessed a five percent (5%) late charge on "the total amount due" if "not paid on the maturity date," thereby expressly breaching section 5 of the Loan Servicing Agreements.  Compass did so to create a pretext to pay itself a windfall at the expense of the Bay Pompano Lenders.

Compass' accountings show that as of October 2, 2007, Compass claims $964,676 in late charges (when only $9,651 was owed) and $1,633,716 in compounded default interest – neither of which is allowed under the Bay Pompano Note and Loan Servicing Agreements.

Similarly, Compass has collected only $2,812 in late charges from the borrower under the Palm Harbor Note and none of the default interest accrued under that note.  Thus, Compass is not

---

[3]    Compass's attempt to pay itself millions of dollars in exorbitant late charges and default interest is unconscionable given that it already received the "bulk of its revenues from charging loan fees ('points') to the Borrower."

entitled to assess any late charges in excess of $2,812 or any default interest under the Palm Harbor Loan against Pathfinder. Nevertheless, according to an accounting of the Palm Harbor Loan that Compass filed on November 15, 2007, Compass is claiming, as of October 2, 2007, $1,385,049 in late charges that Compass has not collected from the borrower. Compass also assessed $2,711,502 in late charges against the Gramercy Lenders (including Pathfinder) as of April 8, 2008, even though such late charges were never collected from the borrower.

### 3. Compass claims the right to pay itself unconscionable default interest in breach of section 5 of the Loan Servicing Agreements.

Compass breached section 5 of the Loan Servicing Agreements by compounding the default interest due under the Bay Pompano Note. Although the Bay Pompano Note provides that interest at the non-default rate (13%) is to be compounded monthly, the Bay Pompano Note does not allow interest at the default rate (an additional 7%) is to be compounded at all. Section 1 of the Bay Pompano Note regarding non-default interest provides as follows:

> 1.  Interest Rate. Interest at the rate of thirteen percent (13%) per annum on the outstanding balance of principal evidenced by this Note shall accrue as follows…. **Accrued but unpaid interest shall be compounded monthly.** This will result in a slightly higher interest rate than that stated.

By contrast, section 9 of the Bay Pompano Note regarding default interest does not provide for the compounding of default interest. Section 9 provides:

> 9.  Default Rate. From and after the Maturity Date or, if any Event of Default occurs and is not timely cured, from the date that is ten (10) days after the date the payment was due, through and including the date that such default is cured, at the option of the holder hereof, all amounts owing under the Note and all sums owing under all of the Loan Documents shall bear interest at a default rate equal to twenty percent (20%) per annum ("Default Rate"). Such interest shall be paid on the first day of each month thereafter, or on demand if sooner demanded.

Although section 5 of the Loan Servicing Agreements provides only for "default interest collected from the Borrower pursuant to the terms of the Note," the terms of the Bay Pompano Note do not allow default interest to be compounded monthly and Compass has not collected any

default interest from the borrower. Nevertheless, Compass claims that wrongly inflated default interest is payable to Compass before any principal and interest are repaid to Pathfinder.

The Loan Servicing Agreements, which control the contractual relationship between Compass and Pathfinder, do not permit Compass to receive loan servicing fees, late charges, or default interest ahead of the sums due and owing to Pathfinder under the loans. To the contrary, the Loan Servicing Agreements contemplate that payments collected from the borrowers will be paid first to principal, then interest, then late charges, and then other fees. For example, Compass is obligated under section 2(c)(i) of the Loan Servicing Agreements to do the following:

> (c)  Until the total amount due under each note is paid in full:
>
>     (i)      Proceed diligently to collect all payments due under the terms of the note and promptly pay the proper parties, when and if due, principal, interest, late charges, insurance and other specified funds.

Thus, according to the Loan Servicing Agreements, the parties contemplated that principal would be paid first, then interest, followed by late charges, insurance and other specified funds. Nevertheless, Compass insists that default interest is payable to Compass before any principal is paid to the Lenders, including Pathfinder. Similarly, even though Compass collected no default interest under the Loans, as of October 2, 2007, Compass assessed against the Palm Harbor Lenders (including Pathfinder) $1,509,269 in default interest and against the Gramercy Lenders (including Pathfinder) at least $6,329,336 in default interest, which, as of April 8, 2008, had grown to $8,805,327.

**D.    Compass Is Negligent In Servicing The Loan.**

Although the Bay Pompano Loan matured nearly two years ago, and has not been repaid – leaving millions of dollars outstanding – Compass waited months before initiating foreclosure proceedings. To date, Compass has failed to seek the appointment of a receiver to capture the

rents and other income generated by the Bay Pompano property pending foreclosure.

By contrast, the holder of the second-priority mortgage encumbering the Bay Pompano property promptly initiated foreclosure proceedings, obtained the appointment of a receiver, and continues to assert its rights to the rents and other income generated by the Bay Pompano property. Although Pathfinder and the other Lenders, as holders of the first-priority mortgage, have senior security interests in the rents and other income generated by the property, Compass has not bothered to obtain the appointment of a receiver for the benefit of Pathfinder and the other Lenders or to intervene in the receivership action brought by the second-priority mortgagee to preserve the rents and other proceeds for the benefit of Pathfinder and the other Lenders.

Similarly, although condominium units of the Bay Pompano property have been sold, Compass did not obtain over $6.5 million that should have been received from the sales. The proceeds from the sales of a number of condominium units of the Palm Harbor property are similarly missing or unaccounted for.

On March 3, 2008, more than one and one-half years after the borrower defaulted under the Palm Harbor Loan, Compass and the borrower entered into a settlement agreement allowing Compass to foreclose on the Palm Harbor property or have it sold via a "363 sale" conducted by the Florida Bankruptcy Court presiding over the borrower's estate. Although Pathfinder has repeatedly requested that it be kept informed of the status of the "363 sale" and foreclosure proceedings, Compass has failed to keep Pathfinder informed and refuses to provide Pathfinder with a bid package or any of the documents regarding the 363 sale of the Palm Harbor property.

With respect to the Gramercy Loan, after foreclosure, Compass failed to take reasonable steps to (i) manage the Gramercy property, (ii) ensure that the property is fully leased, (iii) resolve deferred maintenance issues (even when offered financing by Pathfinder to do so), and

(iv) market the property through a qualified third party broker.  Compass also failed to provide Pathfinder with timely and adequate information regarding the Gramercy property.

### E.     Procedural History.

On May 20, 2008, CCM Pathfinder Pompano Bay, LLC filed a Complaint in State Court against Compass regarding the Bay Pompano Loan; on June 9, 2008, Compass filed a Notice of Removal (Case No. 08CIV5258).  On May 22, 2008, CCM Pathfinder Gramercy, LLC filed a Complaint in State Court against Compass regarding the Gramercy Loan; on June 10, 2008, Compass filed a Notice of Removal (Case No. 08CIV5298).  On June 5, 2008, CCM Pathfinder Pompano Bay, LLC filed a Complaint in State Court against Compass regarding the Palm Harbor Loan; on June 10, 2008, Compass filed a Notice of Removal (Case No. 08CIV5297).

## III.    ARGUMENT

### A.     Burden of Proof

"[I]n all cases seeking remand, 'the burden is on the defendant, as the party asserting federal jurisdiction, to demonstrate the propriety of removal.'"  Chille v. United Airlines, 304 F.Supp.2d 466, 469 (W.D.N.Y. 2004) (citing Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42, 46 (2d Cir. 2002) and Linardos v. Fortuna, 157 F.3d 945, 947 (2d Cir. 1998)).

### B.     Confirmation Of The Plan Divested The Bankruptcy Court Of Jurisdiction

Pursuant to 28 U.S.C. § 1334, bankruptcy courts have limited jurisdiction.  After a plan is confirmed, that jurisdiction becomes extremely limited.  "[B]ankruptcy jurisdiction is extremely limited after a plan has been confirmed."  Falise v. American Tobacco Co., 241 B.R. 48, 58 (E.D.N.Y. 1999).  Indeed, "all courts that have addressed the question have ruled that once confirmation occurs, the bankruptcy court's jurisdiction shrinks."  Penthouse Media Group v. Guccione (In re Gen. Media, Inc.), 335 B.R. 66, 73 (Bankr. S.D.N.Y. 2005) (citations omitted).

A plan does not create jurisdiction over post-confirmation matters.  "Of course, the Plan

cannot retain subject matter jurisdiction over an action that does not fall within the court's subject matter jurisdiction under 28 U.S.C. § 1334." <u>Int'l Asset Recovery Corp. v. Thomson McKinnon Sec., Inc.</u>, 335 B.R. 520, 526 (S.D.N.Y. 2005) (citing <u>In re Johns-Manville Corp.</u> 7 F.3d 32, 34-35 (2d Cir. 1993)); <u>Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc. )</u> 372 F.3d 154, 161 (3d Cir. 2004) ("if a court lacks jurisdiction over a dispute, it cannot create that jurisdiction by simply stating that it has jurisdiction in a confirmation or other order").

In this Circuit, the Ninth Circuit (where the Nevada Bankruptcy Court is located), and other circuits, more is required for post-confirmation jurisdiction than mere retention of jurisdiction in a plan. There must be a "close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan or incorporated litigation trust agreement." <u>Resorts Int'l</u>, 372 F.3d at 168-69; <u>Montana v. Goldin (In re Pegasus Gold Corp.)</u>, 394 F.3d 1189, 1194 (9th Cir. 2005); <u>Bank of Louisiana v Craig's Stores (In re Craig's Stores)</u>, 266 F.3d 388, 390 (5th Cir. 2001); <u>Goodman v. Phillip R. Curtis Enters., Inc.</u>, 809 F.2d 228, 232 (4th Cir. 1987); <u>Int'l Asset</u>, 335 B.R. at 526; <u>Rahl v. Bande</u>, 316 B.R. 127, 133 (S.D.N.Y. 2004).

Nothing in the State Actions implicates the "interpretation, implementation, consummation, execution, or administration" of the Debtor's Plan. The Plan already has been consummated and all assets distributed. The Debtor is not a party to the State Actions, and the State Actions will have no impact on its bankruptcy estate or on any distributions under the Plan. (Marcus Decl., Exs. G & H.) The requisite "close nexus" to the Debtor's plan does not exist. Accordingly, the Nevada Bankruptcy Court lacks jurisdiction over the State Actions.

**C.    The Court Should Remand Pursuant To Mandatory Abstention**

28 U.S.C. § 1334(c)(2) provides that:

Upon timely motion of a party in a proceeding based upon a State law claim or

State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if any action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

Until <u>Mt. McKinley Ins. Co. v. Corning Inc.</u>, 399 F.3d 436 (2d Cir. 2005) was decided, case law in New York District Courts was unsettled whether the "mandatory abstention" doctrine in 28 U.S.C. § 1334(c)(2) applied to removed actions. <u>Id.</u> at 446-47. In 2005, the Second Circuit in <u>Mt. McKinley</u> answered this question in the affirmative. <u>Id.</u> at 447; <u>Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.</u>, 337 B.R. 22, 26 (S.D.N.Y. 2005) ("[T]he Second Circuit Court of Appeals did directly address this issue in <u>Mt. McKinley</u>."). <u>See</u> <u>Stoe v. Flaherty</u>, 436 F.3d 209 (3d Cir. 2006) (mandatory abstention under 28 U.S.C. §1334(c)(2) applies to removed cases and is consistent with remand under 28 U.S.C. §1452). Thus, it is now "well-settled" that a state court action removed under 28 U.S.C. § 1452 is subject to "mandatory abstention" and remand when the following requirements are met:

(1) the motion was timely brought; (2) the proceeding in federal court is based upon a state law claim; (3) the proceeding is "related to" a bankruptcy proceeding, but does not arise under title 11 or arise in a title 11 case; (4) section 1334 is the sole basis for federal jurisdiction; (5) "an action is commenced" in state court; and (6) the action can be "timely adjudicated" in state court.

<u>Certain Underwriters</u>, 337 B.R. at 26 (citing 28 U.S.C. §1334(c)(2) and <u>Bondi v. Grant Thornton Int'l.</u>, 322 B.R. 44, 49-50 (S.D.N.Y. 2005)).

Here, all of the requirements for mandatory abstention are satisfied.

### 1.    The Motion for Remand was timely brought.

Compass's Notices of Removal were filed on June 9 and 10, 2008. A few days later, counsel for Pathfinder and Compass jointly called the Court to schedule the briefing and hearing of the Motion for Remand. Pursuant to the Court's briefing schedule, the Motion for Remand is

filed on June 26, 2008.  There is no dispute that Pathfinder's Motion for Remand is timely.

## 2.    The Complaint is based exclusively on state law claims.

The State Actions assert claims for (1) Breach of Contract, (2) Breach of Fiduciary Duty, (3) Declaratory Relief, (4) Negligence and (5) Accounting, all of which are based on state law.

## 3.    The Complaint asserts only "non-core" claims.

28 U.S.C. § 157(b)(2) provides that:

Core proceedings include, but are not limited to –

(A)  matters concerning the administration of the estate;

(B)  allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C)  counterclaims by the estate against persons filing claims against the estate;

(D)  orders in respect to obtaining credit;

(E)  orders to turn over property of the estate;

(F)  proceedings to determine, avoid, or recover preferences;

(G)  motions to terminate, annul, or modify the automatic stay;

(H)  proceedings to determine, avoid, or recover fraudulent conveyances;

(I)  determinations as to the dischargeability of particular debts;

(J)  objections to discharges;

(K)  determinations of the validity, extent, or priority of liens;

(L)  **confirmations of plans**;

(M)  orders approving the use or lease of property, including the use of cash collateral;

(N)  orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate;

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and

(P) recognition of foreign proceedings and other matters under chapter 15 of title 11.

Paragraph 9 of Compass's Notice of Removal alleges that the State Action is purportedly a "core proceeding" under 28 U.S.C. § 157(b) in that:

it (a) involves rights of [Compass] established under Chapter 11 Plan, (b) implicates an injunction entered by the Nevada Bankruptcy Court in favor of Compass and against certain of the Investors, and (c) will have a direct impact on the administration of the Debtors' estates and the recovery of creditors.

Compass's arguments are without merit. First, whether a matter constitutes a "core proceeding" depends on whether the matter involves "confirmation of plans." Debtor's Third Amended Plan of Reorganization was confirmed on January 8, 2007. Thus, Pathfinder's claim for breach of the Loan Servicing Agreements will not have any impact on the confirmation of Debtor's Plan, which occurred one and one half years ago. Second, the State Actions do not "implicate" any injunction entered by the Nevada Bankruptcy Court. Third, Compass' claim that the State Actions will impact the administration of the Debtor's estate and the recovery of creditors is nonsense, as Pathfinder's claims are not against the Debtor.

Indeed, the Second Circuit has explained that an action for breach of contract between non-debtor parties does not constitute a "core proceeding" where, as here, (1) the contract (i.e., Loan Servicing Agreements) was entered into prior to the debtor's filing of the bankruptcy petition; and (2) the debtor is not a party to the contract action. Mt. McKinley, 399 F.3d at 448-49 ("As in *United States Lines*, the **pre-petition execution** of the insurance contracts suggests that this lawsuit is not core to PCC's reorganization. Moreover, unlike *United States Lines*, the **debtor is not involved in this lawsuit**, and plaintiffs here seek to adjudicate the rights of non-debtors only. Thus, the adjudication of the claims in this lawsuit will have no direct impact on

PCC's bankruptcy proceedings."). See Covanta Onondaga Ltd. v. Onondaga County Resource Recovery Agency, 281 B.R. 809, 815 (N.D.N.Y. 2002) ("the Second Circuit has held that 'a breach of contract action by a debtor against a party to a pre-petition contract, who filed no claim with the bankruptcy court is non-core'") (citing Orion Pictures Corp. v. Showtime Networks, Inc., 4 F.3d 1095, 1102 (2d Cir. 1993)); Vornado Realty Trust v. The Stop & Shop Supermarket Cos. (In re Bradlees, Inc.), 2005 WL 106794 at *5 (S.D.N.Y.) ("When reduced to its essentials, Judge Lifland's ruling, as noted above, was that this is a contractual dispute … between non-debtors that is only remotely related to the Bradlees bankruptcy case, one that is closed. Thus, Judge Lifland did not--indeed, could not--have retained jurisdiction over a dispute such as this."); Burger Boys, Inc. v. South Street Seaport L. P. (In re Burger Boys, Inc.), 183 B.R. 682, 685-87 (S.D.N.Y. 1994) (debtor's claims against landlord for breach of lease did not constitute a "core proceeding"); Allied Mechanical & Plumbing Corp. v. Dynamic Hostels Housing Dev. Fund Co., 62 B.R. 873, 877 (S.D.N.Y.1986) ("where the issues raised in the adversary proceeding involve a state law breach of contract dispute which would not have been commenced in the bankruptcy court but for the bankruptcy filing, the adversary proceeding should be regarded as a 'related to' case which does not 'arise under' title 11").

### 4.    There is No Independent Federal Jurisdiction.

Pathfinder has not asserted any matters unique to federal law, nor do the State Actions involve any substantive rights or remedies under the Bankruptcy Code. In addition, there is no "complete diversity" among the parties, as Pathfinder and Compass are both Delaware limited liability companies and at least one member of Pathfinder and at least one member of Compass are citizens of New York. (Declaration of Selby Jessup, Exs. A-D; Declaration of Gil Tenzer, ¶ 3.) 28 U.S.C. § 1332(a)(1). McCarthey Investments, LLC v. Shah, 2007 WL 3254418 at *2 (S.D.N.Y.) ("For diversity purposes, limited liability companies and limited partnerships have

the citizenships of each of their members or partners.") (citing Grupo Dataflux v. Atlas Global

Group, L.P., 541 U.S. 567, 579 (2004); Handelsman v. Bedford Village Assoc. Ltd. Partnership,

213 F.3d 48, 51-52 (2d Cir. 2000)).

Even if there were complete diversity among the parties (and there is not), there is no

removal jurisdiction.  The State Actions were filed in New York and Compass is a citizen of

New York.  28 U.S.C. § 1441(b) ("action shall be removable only if none of the ... defendants is

a citizen of the State in which such action is brought").

In sum, there is no basis for federal jurisdiction over the State Actions.

### 5.    The State Actions were properly commenced in State Court and can be timely adjudicated there.

The underlying action seeks declaratory relief as to the rights and obligations of

Pathfinder and Compass under the Loan Servicing Agreements.  A declaratory judgment action

concerning a contract can and will be timely adjudicated in State Court.  Certain Underwriters,

337 B.R. at 27 ("The plaintiffs argue persuasively that a declaratory judgment action concerning

insurance coverage would be a routine action in state court.  There is no basis to find that this

action cannot be timely adjudicated in New York state courts, and thus this is a case where the

Court must apply mandatory abstention and remand the action to state court."); Buechner v.

Avery, 2005 WL 3789110 at *6 (S.D.N.Y.) ("Every indication is that this case can be

adjudicated in state court in a reasonably prompt manner. See 22 NYCRR § 202.19(b) (Uniform

Civil Rules for Supreme Court and County Court setting aspirational goals ranging from 8

months for completion of discovery in an 'expedited' case to 15 months for the completion of

discovery in a 'complex' case).").

As Compass acknowledges in the Notice of Removal, Compass intends to file a Motion

for Transfer of Venue to the Nevada Bankruptcy Court based on the faulty premise that the State

Actions are "related to" the Debtor's Chapter 11 case administered by the Nevada Bankruptcy Court. If the State Actions are transferred to the Nevada Bankruptcy Court, Compass will then have to file another motion to withdraw the reference of the State Actions from the Nevada Bankruptcy Court to the Nevada District Court because bankruptcy courts are not empowered to conduct jury trials. Thus, the procedural quagmire created by Compass will delay the prosecution of the State Actions for months.

In addition, because the Debtor's Plan has been confirmed and consummated, the bankruptcy estate will not be affected by any timeliness concerns. Vornado Realty, 2005 WL 106794 at *7 (S.D.N.Y.) ("[T]he debtor's plan has been confirmed and consummated and thus the estate will not be affected by any timeliness concerns.... Finally, as the *Acolyte Elec. Corp.* court noted, '[a]n examination of pertinent statistics indicate there is no great disparity between the median time it takes for a civil proceeding to work its way through the state or federal system.' There is, therefore, no indication that this matter-which has had no action taken on the substance of the dispute in any forum-cannot be timely adjudicated in state court.").

In Certain Underwriters, plaintiff filed an action against defendants, which were subsidiaries of debtor, claiming the defendants breached the terms and conditions of insurance policies by assigning those policies to a trust established pursuant to debtor's bankruptcy reorganization plan, and seeking a declaratory judgment relieving the insurers from their obligation to indemnify the defendants for asbestos-related bodily injury claims asserted by third-party claimants. Defendants removed the action to the bankruptcy court, claiming that the action was related to debtor's plan of reorganization because plaintiff's action was "related to" the bankruptcy of debtor (defendants' parent company). The District Court for the Southern District of New York held that it is "unnecessary" determine whether plaintiff's action is "related

to" the bankruptcy of defendants' parent company because, in light of the Second Circuit's

decision Mt. McKinley, plaintiff's action was subject to "mandatory abstention" and remand.

Similarly, here, the State Actions are subject to "mandatory abstention" and remand.

### D.    The Court Should Remand Pursuant To Permissive Abstention

28 U.S.C. § 1334(c)(1) provides that:

> Except with respect to a case under chapter 15 of title 11, nothing in this section
> prevents a district court in the interest of justice, or in the interest of comity with
> State courts or respect for State law, from abstaining from hearing a particular
> proceeding arising under title 11 or arising in or related to a case under title 11.

Thus, under 28 U.S.C. § 1334(c)(1), a state court action that is removed under 28 U.S.C.

§ 1452 is also subject to "permissive abstention" and remand.

> In determining whether to exercise permissive abstention under § 1334(c) courts
> have considered one or more (not necessarily all) of twelve factors:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court
> recommends abstention, (2) the extent to which state law issues predominate over
> bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law,
> (4) the presence of a related proceeding commenced in state court or other non-
> bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334,
> (6) the degree of relatedness or remoteness of the proceeding to the main
> bankruptcy case, (7) the substance rather than form of an asserted "core"
> proceeding, (8) the feasibility of severing state law claims from core bankruptcy
> matters to allow judgments to be entered in state court with enforcement left to
> the bankruptcy court, (9) the burden of [the court's] docket, (10) the likelihood
> that the commencement of the proceeding in a bankruptcy court involves forum
> shopping by one of the parties, (11) the existence of a right to a jury trial, and (12)
> the presence in the proceeding of non-debtor parties.

Cody, Inc. v. Town of Orange (In re Cody, Inc.), 281 B.R. 182, 190-91 (S.D.N.Y. 2002).  As

demonstrated below, virtually all these factors weigh in favor of "permissive abstention."

### 1.    Efficient administration of estate.

As explained in Part A, supra, the State Actions involve the rights and obligations of

nondebtors under Loan Servicing Agreements.  Accordingly, the prosecution of the State Actions

will have no effect on the efficient administration of Debtor's estate.

2.    **Extent to which state law issues predominate over bankruptcy issues.**

All of Pathfinder's causes of action involve only state law claims.

3.    **Difficulty or unsettled nature of the applicable state law.**

Pathfinder does not believe its claims are "novel, complex or unsettled," so Pathfinder acknowledges that this factor "does not tip decidedly in favor of remand." Buechner v. Avery, 2005 WL 3789110 at *6 (S.D.N.Y.)

4.    **Presence of a related proceeding commenced in state court.**

The State Actions were commenced in State Court. The State Actions do not turn on any issue that is being litigated in the Nevada Bankruptcy Court as Pathfinder's claims do not involve Debtor. The only parties to the Loan Servicing Agreements at issue are Pathfinder and Compass. Buechner, 2005 WL 3789110 at *6 (S.D.N.Y.) ("The interests of comity are promoted by allowing the claims to remain where the plaintiffs elected to bring them, i.e. state court.").

5.    **Jurisdictional basis, if any, other than 28 U.S.C. § 1334.**

As explained in Part A, supra, there is no basis for federal court jurisdiction.

6.    **Degree of relatedness or remoteness of the proceeding to the main bankruptcy case.**

As explained in Part A, supra, the State Actions involve a contract dispute between non-debtors. As such, the State Actions are unrelated to Debtor's bankruptcy case. Buechner, 2005 WL 3789110 at *6 (S.D.N.Y.) ("The state action does not turn on any issue that is now being litigated in Bankruptcy Court.").

7.    **Substance rather than form of an asserted "core" proceeding.**

As explained in Part A, supra, the substance of the State Actions are contract disputes between non-debtor parties that arose after Debtor's Plan was confirmed. The substance of the State Actions do not constitute a "core" proceeding.

8.    **Feasibility of severing state law claims from core bankruptcy matters.**

The State Actions involve purely state law claims, so there is nothing to sever from any "core bankruptcy matters."

9.    **The burden of the Nevada District Court's docket.**

The District Court of Nevada has a heavy docket.  According to the 2007 Annual Report of the Director of Administrative Office of the U.S. Courts, the median interval from filing to trial of civil cases in Nevada District Court is 36 months, as compared to 29 months for Southern District of New York.  (Marcus Decl., Ex. I.)  The 2006 Annual Report[4] of the Chief Administrator of New York Courts provides that the "standard-and-goal periods for Supreme Court civil cases" are 23 months for expedited cases, 27 months for standard cases, and 30 months for complex cases.  (Marcus Decl., Ex. J.)  Accordingly, the Nevada District Court's heavy docket weighs in favor of remand.

10.    **Likelihood of forum shopping by one of the parties.**

Since Compass' principal place of business and witnesses are located in New York, its attempt to transfer the State Actions from New York to Nevada smacks of forum shopping.

11.    **Jury Trial right**

Pathfinder is entitled to a jury trial of its damages claim for breach of the Loan Servicing Agreements.  The Nevada Bankruptcy Court cannot conduct a jury trial.  Buechner, 2005 WL 3789110 at *6 ("Each party's right to trial by jury can be protected in state court.  In contrast, the Bankruptcy Court is not empowered to conduct a jury trial absent the consent of all parties.").

12.    **Presence in the proceeding of non-debtor parties.**

The parties to the State Actions are all non-debtors.

---

[4]    The 2006 Annual Report was the most recent Annual Report available on the New York State Court website.

In sum, virtually all of the twelve factors listed above weigh in favor of remand.

**E.    The Bankruptcy Court Lacks "Related To" Jurisdiction And Did Not Retain "Exclusive Jurisdiction" Over "All Matters" Regarding The Loan Servicing Agreements**

Once a bankruptcy plan has been confirmed, "related to" jurisdiction under 28 U.S.C. § 1334(b) is severely restricted. This is true where, as here, the State Actions involve purely state law contract claims between nondebtor parties and Compass' acquisition of Debtor's Loan Servicing Agreements already have been consummated pursuant to the Third Amended Plan of Reorganization, which was confirmed one and one-half years ago.

> Thus, **in the Second Circuit, as a general rule, a bankruptcy court's jurisdiction extends until the debtor's plan of reorganization has been confirmed.** *In re Johns-Manville Corp.*, 7 F.3d 32, 34 (2d Cir.1993). "After a debtor's reorganization plan has been confirmed, the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan." *In re Craig's Stores of Texas, Inc.*, 266 F.3d 388, 390 (5th Cir.2001); *Presidential Gardens Assocs.*, 175 F.3d at 142 (jurisdiction "does not normally survive the dismissal of the underlying bankruptcy proceeding"); *In re Fairfield Cmtys., Inc.*, 142 F.3d 1093, 1095 (8th Cir.1998); *In re Johns-Manville Corp.*, 7 F.3d at 34; *see also Southwest Marine, Inc. v. Danzig*, 217 F.3d 1128, 1140 (9th Cir.2000), *cert. denied*, 532 U.S. 1007, 121 S.Ct. 1733, 149 L.Ed.2d 658 (2001). Although the extent of post-confirmation jurisdiction is subject to great debate, see, e.g., Collier on Bankruptcy, ¶ 1142.04, at 1142-6-1142-7 (Lawrence P. King ed., 15th ed.2000); *In re Gordon Sel-Way, Inc.*, 270 F.3d 280, 288 (6th Cir.2001), **the Second Circuit has clearly stated that "[a] bankruptcy court retains post-confirmation jurisdiction only to the extent provided in the plan of reorganization."** *In re Johns-Manville Corp.*, 7 F.3d at 34; *see also In re U.S.H. Corp. of New York*, 280 B.R. 330, 334 (Bankr. S.D.N.Y. 2002); *In re Almac's, Inc.*, 202 B.R. at 656 ("[A]lthough parties may not create jurisdiction by provision in a confirmed plan where it does not otherwise exist, many courts find the retention of jurisdiction to be a prerequisite to the adjudication of a post confirmation claim in bankruptcy court.").

ICCO Design/Build, Inc. v. Sunbrite Cleaners, Inc. (In re Sunbrite Cleaners, Inc.), 284 B.R. 336, 339-40 (N.D.N.Y. 2002) (emphasis added).

The Plan provided for the Nevada Bankruptcy Court's retention of jurisdiction only with respect to disputes concerning Section 3 of the Loan Servicing Agreements – i.e., the removal

and substitution of Compass as loan servicer.  (Marcus Decl., Ex. H.)  Nevertheless, paragraph 5

of Compass's Notice of Removal claims that:

> The Chapter 11 Plan that was confirmed by the Nevada Bankruptcy Court
> provides that the Nevada Bankruptcy Court ... shall retain exclusive jurisdiction
> to determine all matters related to the loan servicing agreements ....   Both the
> Nevada Bankruptcy Court and the Nevada District Court have since entered
> orders determining that they have subject matter jurisdiction over litigation
> involving the interpretation and enforcement of the loan servicing agreements ....

Compass's claims are without merit.  Section VIII-D of the Plan states that:

> Bankruptcy Court shall retain exclusive jurisdiction over all matters **arising out
> of and related to the Chapter 11 Cases**, the assets and liabilities of the Estates
> and the Trust Estates, and the Plan to the fullest extent permitted by law,
> including, but not limited to:
>
> 7.    Hearing and determining all matters related to Loan Servicing Agreements
> ....

(Marcus Decl., Ex. G.)

The State Actions do not affect Debtor or its Chapter 11 Cases because Pathfinder's

claims for damages are against a third party – Compass.  Accordingly, the State Actions "do not

arise out of and related to the Chapter 11 Cases."  To the contrary, the Bankruptcy Court's Order

confirming the Plan makes clear that the Bankruptcy Court retained jurisdiction only as to

substitution of Compass under section 3 of the Loan Servicing Agreements.  The State Actions

do not seek to substitute Compass under section 3 of the Loan Servicing Agreements.

Paragraph 14 of the Confirmation Order provides that:

> **[I]n connection with any attempted post-Closing exercise of a Surviving
> Section 3 Right**: (a) the Direct Lenders must provide Compass at least thirty (30)
> days prior written notice of the intended exercise of such right in accordance with
> section 8 of the Loan Servicing Agreement, (b) Compass shall have the right to
> challenge the exercise of such Surviving Section 3 Right by filing a motion with
> this Court prior to the expiration of such thirty (30) day period to determine
> whether such Surviving Section 3 Right has been properly and validly exercised
> (the "Compass Motion") **and the Court shall retain jurisdiction to adjudicate
> any such disputes**, (c) in the event Compass timely files such Compass Motion,
> the effectiveness of the attempted exercise of such Surviving Section 3 Right shall

be stayed pending this Court's entry of an order in respect of the Compass Motion, and (d) the post-Closing survival of such Surviving Section 3 Right shall not impair in any respect any rights or interests of Compass under the Loan Servicing Agreements, including, without limitation, its rights under Section 2(c)(iii) of the Loan Servicing Agreement.

(Marcus Decl., Ex. H.)

Indeed, the Confirmation Order expressly states that disputes between Compass and lenders under the Loan Servicing Agreements that do not involve terminating Compass under the "Surviving Section 3 Right" may be brought in any "court of competent jurisdiction" and not just in the Nevada Bankruptcy Court. Thus, Paragraph 82 of the Confirmation Order provides:

> Nothing contained in the Asset Purchase Agreement shall modify the obligations owed to the Lenders by Compass as the loan servicer or rights of the Lenders against Compass as the loan servicer (or the rights of Compass as the loan servicer against the Lenders) under the applicable Loan Servicing Agreements and otherwise applicable law. Compass shall distribute any sums due to Lenders under any of the Loan Servicing Agreements in accordance with the Loan Servicing Agreements, as the same may be modified with consent of the applicable Lenders, and with otherwise applicable law. Compass shall apply all payments and proceeds from Serviced Loans (as such term is defined in the Asset Purchase Agreement), however collected, whether through liquidation of collateral, payments from the Borrower or otherwise, in accordance with  the provisions of the notes and/or loan agreements. Further, notwithstanding the foregoing, to the extent the Bankruptcy Court has entered an order, including, but not limited to, this Confirmation Order, which interprets or enforces provisions of the Loan Servicing Agreements or directs the distribution of payments under the Loan Servicing Agreements or payments collected from Borrowers, Compass, the Lenders, and all other affected parties shall abide by the terms of such order(s). If, as between the provisions of the Loan Servicing Agreements and the order(s) of the Bankruptcy Court, it is not clear to Compass how the sums collected shall be distributed, then Compass shall hold the sums payable to the Lender until Compass either receives direction from the Lender and, as to items not constituting Commercial Mortgage Assets (as such term is defined in the Asset Purchase Agreement), the Sellers (or their successor or assignee under the Plan) regarding disbursement of interest, or is directed by an order from **a court of competent jurisdiction**.

In sum, contrary to Compass's claim, the Bankruptcy Court did not retain jurisdiction over any litigation involving the interpretation and enforcement of the Loan Servicing Agreements. The Bankruptcy Court only retained jurisdiction over "any attempted post-Closing

exercise of a Surviving Section 3 Right," which is not at issue in the State Actions.

## IV.    CONCLUSION

For the reasons set forth above, Pathfinder respectfully requests that the Court abstain

from adjudicating the State Actions and remand them back to the Supreme Court of New York.

Dated: New York, New York.
      June 26, 2008

DLA PIPER US LLP

By: _____

    Betty M. Shumener
    Todd B. Marcus (TM/5404)
1251 Avenue of the Americas
New York, New York  10020
(212) 335-4500
*Attorneys for Plaintiffs*