Scott A. Edelman (SE-5247)
Daniel M. Perry (DP-6966)
MILBANK, TWEED, HADLEY & McCLOY, LLP
1 Chase Manhattan Plaza
New York, NY  10005-1413
(212) 530-5000

*Counsel for Compass Financial Partners LLC and*
*Compass USA SPE LLC*

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CCM PATHFINDERGRAMERCY, LLC) | |
| ) | Case No:  08 Civ. 5298 (JSR) |
| Plaintiff,        ) | |
| ) | |
| -against-       ) | |
| ) | **MEMORANDUM OF POINTS AND** |
| COMPASS FINANCIAL PARTNERS   ) | **AUTHORITIES IN SUPPORT OF** |
| LLC and COMPASS USA SPE LLC,   ) | **MOTION FOR ORDER TRANSFERRING** |
| ) | **VENUE OF REMOVED ACTIONS TO** |
| Defendants.   ) | **UNITED STATES DISTRICT COURT** |
| ) | **FOR THE DISTRICT OF NEVADA** |

# TABLE OF CONTENTS

Page

I.    FACTUAL BACKGROUND ................................................................... 3

II.   ARGUMENT ...................................................................................... 9

    A.   THE NEVADA DISTRICT COURT HAS JURISDICTION OVER THE
        INTERPRETATION AND ENFORCEMENT OF THE AGREEMENTS AND
        ORDERS AT THE HEART OF THIS DISPUTE ............................................. 9

        1.   The Nevada District Court Has Subject Matter Jurisdiction  Over the Claims
              Brought by Plaintiffs in the NY Actions................................. 9

        2.   A Close Nexus Exists Between Plaintiffs' Claims in the NY Actions and the
              Bankruptcy Proceedings and Subsequent Litigation ............................... 11

        3.   The Chapter 11 Plan and the Sale and Confirmation  Order Expressly
              Provide for the Retention of Bankruptcy Jurisdiction Over Disputes
              Regarding the Asset Purchase Agreement and the Loan Servicing
              Agreements ......................................................................... 15

        4.   In re Petrie Requires that the Nevada District Court Resolve this Dispute
              Between Non-Debtor Third Parties ........................................... 15

    B.   THE CLAIMS IN THE NY ACTIONS AND THE NEVADA LITIGATION
        INVOLVE THE SAME PROPERTY AND ARE SO SIMILAR THAT THEY
        MUST BE CONSOLIDATED TO AVOID THE POSSIBILITY OF
        INCONSISTENT RESULTS............................................................. 17

    C.   APPLICATION OF THE TRADITIONAL VENUE TRANSFER FACTORS
        SHOW THAT PLAINTIFFS WILL NOT BE PREJUDICED BY TRANSFER OF
        VENUE ................................................................................... 19

III.  CONCLUSION................................................................................ 24

TABLE OF AUTHORITIES

Page

Cases

*Ames Dept. Stores, Inc. v. TJX Co., Inc.*
190 B.R. 157 (S.D.N.Y. 1995) ........................................................................ 10

*Asset Purchase Agreement Excelsior III L.P. v. Premiere Technologies, Inc.*
49 F.Supp.2d 664 (S.D.N.Y. 1999) ................................................................ 19

*Committee of Asbestos Claimants of G-I Holding, Inc.*
306 B.R. 746 (S.D.N.Y. 2004) ........................................................................ 19

*Factors Etc., Inc. v. Pro Arts, Inc.*
579 F.2d 215 (2d Cir. 1978) ............................................................................ 20

*Fort Howard Paper Co. v. William D. Witter, Inc.*
787 F.2d 784 (2d Cir. 1986) ............................................................................ 19

*Harve Benard Ltd. v. Nathan Rothschild, K.I.D. Intern.*
2003 WL 367859 at *6, (S.D.N.Y., Feb. 19, 2003) ...................................... 10

*In re Cuyahoga Equipment Corp.*
980 F.2d 110 (2d Cir. 1992) ............................................................................ 19

*In re General Media, Inc. v. Guccione (In re General Media, Inc).*
335 B.R. 66 (Bankr. S.D.N.Y. 2005) .............................................................. 11

*In re Kassover*
336 B.R. 74 (Bankr. S.D.N.Y. 2006) ........................................................ 10, 11

*In re Manville Forest Products Corp.*
896 F.2d 1384 (2d Cir. 1990) .................................................................... 18, 19

*In re McCrory Corp.*
160 B.R. 502 (S.D.N.Y. 1993) .......................................................................... 9

*In re Northwest Airlines Corp.*
384 B.R. 51 (S.D.N.Y. 2008) .......................................................................... 21

*In re Pegasus Gold Corp.*
349 F.3d 1189 (9th Cir. 2005) ........................................................................ 11

*In re Petrie, Retail, Inc.*
304 F.3d 223 (2d. Cir. 2002) ..................................................................... 16, 17

*In re Resorts Int'l Inc.*
372 F.2d 154 (3d Cir. 2004) ............................................................................ 11

*In re Vienna Park Properties*
125 B.R. 84 (S.D.N.Y. 1991) .......................................................................... 20

*Official Committee of Asbestos Claimants of G-I Holding, Inc.*
306 B.R. 746 (S.D.N.Y. 2004) .......................................................................... 9

TABLE OF AUTHORITIES

Page

Cases

*Publicker Indus. Inc. v. U.S.*
    980 F.2d 110 (2d Cir. 1992)..................................................................... 10

*Street v. The End of the Road Trust,*
    386 B.R. 539 (D.Del. 2008)..................................................................... 11

*Turner v. Ermiger (In re Turner)*
    724 F.2d 338 (2d Cir. 1983)..................................................................... 10

*William Gluckin & Co. v. International Playtex Corp.*
    407 F.2d 177 (2d Cir. 1969)..................................................................... 20


Statutes


28 U.S.C. § 1334.................................................................................... 10, 12

28 U.S.C. § 1404(a) ............................................................................. 9, 10, 21

28 U.S.C. § 157.................................................................................... 5, 16

28 U.S.C. 1412.................................................................................... 9, 10, 21

Defendants Compass Financial Partners LLC and Compass USA SPE LLC ("Compass") hereby move this Court for an order transferring venue of the civil proceedings bearing the case numbers 08 Civ. 5257, 08 Civ. 5297 and 08 Civ. 5298 (the "NY Actions") to the United States District Court for the District of Nevada sitting in Las Vegas (the "Nevada District Court") on the grounds that: (a) the claims and demands for relief contained in the NY Actions, which concern the servicing of certain loans by Compass, are already the subject of ongoing, consolidated litigation pending in the Nevada District Court *regarding the very same loans* and involving claims and demands asserted by other participants in the same loans, and (b) transferring venue will avoid the creation of multiple competing lawsuits seeking relief on the identical subject matter in two different courts with the inherent risk of inconsistent factual findings, legal conclusions, and rulings.

The NY Actions concern three loans:

(1) a loan in the original principal amount of $32 million made by a group of lenders, including predecessors in interest to plaintiff herein (CCM Pathfinder Pompano Bay LLC), to borrower "Bay Pompano Beach, LLC;"

(2) a loan in the original principal amount of $34 million, made by a group of lenders, including predecessors in interest to plaintiff herein (CCM Pathfinder Gramercy, LLC), to borrower "Gramercy Court, Ltd.;" and

(3) a loan in the original principal amount of $29 million, made by a group of lenders, including predecessors in interest to plaintiff herein (CCM Pathfinder Pompano Bay, LLC), to borrower "Palm Harbor One, LLC."

*See* Declaration of Gabriel Weaver filed herewith ("Weaver Decl.") Exs. A, B, and C. The plaintiffs in the NY Actions, the three Pathfinder entities identified above, are hereinafter referred to together as "Plaintiffs." The three loans that are the subject of the NY Actions are among the fifty-two loans governed by the same or substantially similar documents that are

currently the subject of the Nevada litigation discussed below. The very same claims and

requests for relief contained in the NY Actions *are already the subject of the Nevada litigation*.

Transferring venue of the NY Actions to the Nevada District Court will facilitate consolidation

of four substantially identical lawsuits (the three NY Actions and the existing litigation

pending in the Nevada District Court) regarding the same borrowers, loans, properties, and

claims for relief, in the court in which the first action has been pending now for over one year,

the Nevada District Court—a court that, as described below, has spent substantial time and

effort sorting out the merits, or lack thereof, of the claims.

 There is a strong policy favoring the litigation of related (here, nearly identical) claims in

the same court so that (a) pretrial discovery can be conducted more efficiently, and (b)

inconsistent results in duplicative litigation can be avoided. Where, as here, the NY Actions

have a close nexus to a pending bankruptcy case and bankruptcy litigation, there is a strong

presumption in favor of transferring the related litigation to the district where the bankruptcy

case and bankruptcy litigation is pending – here, the District of Nevada.

 As shown below, on January 8, 2007, an asset purchase agreement ("Asset Purchase

Agreement" or "APA;" Weaver Decl. Ex. D.) was approved and a chapter 11 plan (the "Chapter

11 Plan") was confirmed pursuant to an order (the "Sale and Confirmation Order") entered by

the United States Bankruptcy Court for the District of Nevada (the "Nevada Bankruptcy Court")

in a chapter 11 case (the "Chapter 11 Case") that remains pending before it. Pursuant to the

Asset Purchase Agreement, the Chapter 11 Plan, and the Sale and Confirmation Order, Compass

purchased from the Chapter 11 Debtor the rights to service certain commercial real property

loans, including the three loans that are the subjects of the NY Actions. Soon after the Chapter

11 Plan was confirmed, certain lender participants in, among others, the *very same loans* as are

the subject of the NY Actions, filed suit against Compass in the Nevada District Court, alleging that Compass had breached its contractual and fiduciary duties to the lenders under the loan servicing agreements ("Loan Servicing Agreements") with respect to the servicing rights Compass had so acquired. These are the very same allegations made by Plaintiffs in the NY Actions, *and with respect to the very same loans*. The NY Actions thus should be consolidated with the actions pending in the Nevada District Court to avoid the possibility of inconsistent results. Consolidation requires first transferring venue to the Nevada District Court.

Here, the interests of judicial economy and avoiding inconsistent results due to duplicative litigation far outweigh any other considerations. Nevertheless, Plaintiffs will not be prejudiced by transferring venue out of New York. Plaintiffs are represented by DLA Piper US LLC, which has offices in Las Vegas, where the Nevada District Court sits. Plaintiffs, themselves, are alleged to have been organized under the laws of the State of Delaware with their principal places of business in the State of Connecticut. Lead counsel of record practices in DLA Piper's Los Angeles office. This is not, therefore, a case where the Plaintiff has determined to litigate in its home forum and the Court may accord its choice of forum substantial deference.

The NY Actions principally seek interpretation of several contracts (the Chapter 11 Plan, the Asset Purchase Agreement, and the Loan Servicing Agreements). The Nevada District Court already has expended significant time and effort on this task which, in any event, is not likely to require the physical presence of Plaintiffs.

## I.    FACTUAL BACKGROUND

On April 13, 2006, USA Commercial Mortgage Company and four if its affiliates (collectively, the "Debtors") filed for chapter 11 bankruptcy relief in the Nevada Bankruptcy

Court, jointly administered case no. 06-10725 LBR (the "Nevada Bankruptcy Cases"). The Debtors were in the business of originating and servicing loans secured by commercial real property, and raised funds by soliciting individuals and entities (together with their successors and assigns, the "Lenders") to invest in fractional interests in the loans. At the time of the commencement of the Nevada Bankruptcy Cases, the Debtors were servicing 115 separate loans involving approximately 3,600 Lenders.

Plaintiffs were not original lenders in the loans. Rather, each of the Plaintiffs is a subsidiary of self-described "opportunity fund" Pathfinder Partners, LLC, which bought interests in the loans from the original lenders *at a discount*, both during the Bankruptcy Cases and *after* confirmation of the Chapter 11 Plan. That Plaintiffs were investing speculatively in troubled loans that were already under the jurisdiction of the Nevada Federal Courts is beyond any dispute.

On December 7, 2006, the Debtors conducted an auction for certain of their assets, including the Debtors' rights as servicer under Loan Servicing Agreements with the Lenders. Compass was the successful bidder. Pursuant to the Asset Purchase Agreement, as approved by the Sale and Confirmation Order, Compass agreed to pay approximately $67 million, (subject to certain purchase price adjustments that remain the subject of pending litigation in the Nevada Bankruptcy Court). The sale closed and the Chapter 11 Plan became effective, simultaneously, on February 16, 2007 (the "Closing Date").

The Loan Servicing Agreements entitle the servicer, now Compass, to receive as compensation (with certain limited exceptions) Default Rate Interest, Accrued Servicing Fees, Late Charges, Success Fees, (as each such term is defined in the Asset Purchase Agreement), and certain other fees and sums. (*See* Weaver, Decl. Exs. E (Loan Servicing Agreement) at p. 4; and

-4-

D (APA) at pp. 2-7.)  In addition, the Sale and Confirmation Order preserved Compass's rights

to those fees, providing explicitly that neither the Lenders (referred to as "Direct Lenders" in the

Chapter 11 Plan and Sale and Confirmation Order) nor any replacement servicer would have the

right to "compromise, subordinate, or impair" any of the interests purchased by Compass for

"default interest, accrued interest . . . or other amounts purchased under the Loan Servicing

Agreement." (*See* Weaver Decl. Ex. F (Sale and Confirmation Order) at ¶14.)  Finally, the

Chapter 11 Plan provided that the Nevada Bankruptcy Court (and hence as to the litigation in

question, the Nevada District Court) shall, to the fullest extent permitted by law, retain exclusive

jurisdiction to determine all matters related to the Asset Purchase Agreement, the Loan Servicing

Agreements, and the other rights acquired by Compass in respect of the serviced loans.  (*See*

Weaver Decl. Ex. G (Chapter 11 Plan) at Sections VIII.D.6. and VIII.D.7;  *see also* Weaver

Decl. Ex. H, Findings of Fact and Conclusions of Law in Support of Order Confirming the

Debtors' Third Amended Joint Chapter 11 Plan of Reorganization, as Modified Herein, entered

on January 8, 2007 (the "Bankruptcy Court Findings") at ¶ V. ("the Court's retention of

jurisdiction as set forth in Article VIII Section D of the Plan is appropriate and comports with the

parameters contained in 28 U.S.C. § 157.").)

On May 21, 2007, certain Lenders filed suit in the Nevada District Court against

Compass alleging that Compass had breached its contractual and fiduciary duties to the Investors

under the Loan Servicing Agreements.  (*See* Weaver Decl. Ex. I, *3685 San Fernando Lenders

LLC, et al. v. Compass USA SPE LLC, et al.,* Case No. 3:07-CV-241 (the "Nevada Complaint").)

On May 25, 2007, Compass commenced litigation in the Nevada Bankruptcy Court (in the form

of a motion for sanctions that was later deemed an adversary proceeding by the Bankruptcy

Court) against certain of the Lenders to enjoin them from interfering with Compass's rights

under the Chapter 11 Plan, the Asset Purchase Agreement, and the Loan Servicing Agreements. The Nevada Bankruptcy Court enjoined those Lenders from further interference. Thereafter, the litigation commenced by Compass in the Nevada Bankruptcy Court was transferred (by withdrawal of the reference) to the Nevada District Court and consolidated with the Nevada Complaint commenced by certain Lenders against Compass. In addition, the Nevada District Court withdrew the reference of <u>all</u> disputes between Compass and "certain Lenders," and assumed jurisdiction over fifty-two of the loans brokered by Debtor USA Commercial Mortgage Company as to which servicing rights were purchased by Compass, specifically including the three loans that are the subject of the NY Actions. (*See* Weaver Decl. Exs. J (Transcript of the August 6, 2007 Proceedings before the Nevada District Court) at pp. 62-63; and K (Proposed Order Withdrawing Reference).) The consolidated actions are being litigated actively in the Nevada District Court as Case No 2:07-CV-892. There are presently over 550 entries in the docket of the consolidated litigation (the "Nevada Litigation") and more than twenty law firms have appeared on behalf of various parties in interest, including certain other vulture—or "opportunity" funds— that, like Pathfinder, purchased interests in these loans during and after the commencement of the Chapter 11 Case and entry of the Sale and Confirmation Order.

On June 20, 2007 the Nevada Bankruptcy Court entered an order in favor of Compass preventing the plaintiffs in the Nevada Litigation from interfering with the rights Compass acquired pursuant to the Chapter 11 Plan, the Asset Purchase Agreement, and the Sale and Confirmation Order. The order was eventually embodied in a Preliminary Injunction issued by the Nevada District Court of November 6, 2007 (the "Injunction Order," a copy of which is attached to the Weaver Decl. as Exhibit L.) Also, as discussed below, Compass has moved the Nevada District Court for a determination of the critical "waterfall" issue, which will determine

the priority of payments by borrowers on defaulted loans where the payments are insufficient to cover the entire amount of principal, regular interest, default interest, and fees due and owing to the Lenders and Compass. The waterfall issue, the key issue raised in the NY Actions, is already briefed and pending before the Nevada District Court.

In addition, Compass has filed two motions seeking an order of Contempt against the principal organizer of the plaintiffs in Nevada Litigation, Donna Cangelosi, for violation of orders of the Nevada Bankruptcy Court and the Nevada District Court. On November 6, 2007, the Nevada District Court entered an order holding Ms. Cangelosi in civil contempt, reserving the issue of damages for trial. Compass's second contempt motion, against Donna Cangelosi and certain of her cohorts for secretly negotiating with a borrower in violation of the Injunction Order, has been fully briefed, and an evidentiary hearing has been scheduled for September 16, 2008. Also at issue in the Nevada Litigation is whether the Lenders may terminate Compass for cause as servicer and designate a new agent to service the loans in the portfolio. The Nevada District Court has scheduled two weeks of evidentiary hearings for that issue, to begin on August 12, 2008.

Moreover, the Nevada Bankruptcy Court and the Nevada District Court have entered orders determining that they have subject matter jurisdiction over litigation involving the interpretation and enforcement of the Loan Servicing Agreements and the other assets and rights that Compass purchased in the Nevada Bankruptcy Cases pursuant to the Asset Purchase Agreement, the Chapter 11 Plan, and the Confirmation and Sale Order. (*See* Weaver Decl. Exs. M (June 20, 2007 Order of the Nevada Bankruptcy Court) at p. 16; and N (Transcript of the August 27, 2007 Proceedings before the Nevada District Court) at 24.)

Finally, Plaintiffs have already acknowledged in other federal courts that the Nevada District Court has jurisdiction over the disposition of funds arising from administration of the Loan Servicing Agreements. In the chapter 11 bankruptcy case of one of the borrowers implicated in the NY Actions, Palm Harbor One, LLC (pending in the U.S. Bankruptcy Court for the District of Mass., Eastern Div., Case No. 07-15169), an order was entered on March 25, 2008 (docket no. 268) approving a Stipulation of Settlement among Compass, Plaintiff CCM Pathfinder Pompano Bay, LLC, and certain other parties. Paragraph 3.5 of the Stipulation of Settlement, which was signed by Plaintiff, provides that Compass is required to obtain an order from the Nevada District Court determining that the disposition of borrower funds pursuant to the Settlement of Stipulation does not violate the orders of the Nevada District Court. (*See* Weaver Decl. Ex. S, at ¶3.5.)

Notwithstanding all of the pending litigation in the Nevada District Court addressing (a) the critical waterfall issue and (b) the respective rights of Compass and the Investors to interest, fees and default interest, on May 22, 2008 and June 5, 2008, the Plaintiffs sued Compass for breach of the Loan Servicing Agreements and breach of fiduciary duty in the *non-commercial* part of the Supreme Court of the State of New York, County of New York. Yet the loans in which Plaintiffs are participant Lenders, and that are the subject of the NY Actions, are already the subject of the declaratory judgment, breach of Loan Servicing Agreements, and breach of fiduciary duty claims now pending in the Nevada Litigation brought by Lenders that are participants in the same Bay Pompano, Palm Harbor, and Gramercy Court loans. As a result, the claims and causes of action contained in the NY Actions are already being litigated in the Nevada District Court.

## II.    ARGUMENT

### A.    THE NEVADA DISTRICT COURT HAS JURISDICTION OVER THE INTERPRETATION AND ENFORCEMENT OF THE AGREEMENTS AND ORDERS AT THE HEART OF THIS DISPUTE

A federal district court may transfer any civil action to any other district where such action may have been brought.  28 U.S.C. § 1404(a) ("Section 1404").  In addition, a district court may transfer a civil proceeding under title 11 to another district court in the interest of justice and for the convenience of the parties. 28 U.S.C. 1412 ("Section 1412").  Courts consider substantially the same factors for motions to transfer venue under Section 1404 or Section 1412. *Official Committee of Asbestos Claimants of G-I Holding, Inc.,* 306 B.R. 746, 749 (S.D.N.Y. 2004) (citing *In re McCrory Corp.,* 160 B.R. 502, 507 (S.D.N.Y. 1993) ("The standards for § 1412 are essentially the same as those for § 1404(a).").  As shown above and further discussed below, the Nevada District Court has already established subject matter jurisdiction over the causes of action contained in the NY Actions.  In addition, the interests of justice require that venue of the NY Actions be transferred to the Nevada District Court, because the NY Actions should be consolidated and/or coordinated with the Nevada District Court litigation, and transfer of venue will facilitate that consolidation.  Finally, a review of the additional factors considered by courts in adjudicating venue transfer motions will show that Plaintiffs will not be prejudiced if venue of the NY Actions is transferred to the Nevada District Court.

### 1.    The Nevada District Court Has Subject Matter Jurisdiction Over the Claims Brought by Plaintiffs in the NY Actions

In order to transfer venue of a proceeding under Sections 1404 or 1412, the transferee court must have subject matter jurisdiction over the related proceeding.  A civil proceeding has a sufficient connection with a bankruptcy case and bankruptcy litigation so that subject matter

jurisdiction is available under 28 U.S.C. § 1334 when (1) the outcome of such civil proceeding

might have any conceivable effect on the bankrupt estate, or (2) the litigation has a significant

connection with the bankruptcy case. *Turner v. Ermiger (In re Turner)*, 724 F.2d 338, 341 (2d

Cir. 1983) (Friendly, J.). If the question is answered affirmatively, then the civil proceeding falls

within the "related to" jurisdiction of the district court and bankruptcy court under 28 U.S.C.

§ 1334. *See Publicker Indus. Inc. v. U.S.*, 980 F.2d 110, 114 (2d Cir. 1992); *Ames Dept. Stores,

Inc. v. TJX Co., Inc.*, 190 B.R. 157, 160 (S.D.N.Y. 1995); *Harve Benard Ltd. v. Nathan

Rothschild, K.I.D. Intern.*, 2003 WL 367859 at *6, (S.D.N.Y., Feb. 19, 2003).

Section 1334 of Title 28 does not expressly limit a bankruptcy court's jurisdiction

following plan confirmation, although once confirmation has occurred, courts generally agree

that the bankruptcy court's jurisdiction shrinks. *In re Kassover*, 336 B.R. 74, 79 (Bankr.

S.D.N.Y. 2006); *In re General Media, Inc. v. Guccione (In re General Media, Inc)*, 335 B.R. 66,

73 (Bankr. S.D.N.Y. 2005). As the court stated in *In re Kassover*,

> a party invoking the bankruptcy court's post-confirmation jurisdiction must
> satisfy two requirements. First, the matter must have a close nexus to the
> bankruptcy plan or proceeding, as when a matter affects the interpretation,
> implementation, consummation, execution or administration of the confirmed
> plan and second, the plan must provide for the retention of jurisdiction over the
> dispute.

336 B.R. at 79; *see also In re Pegasus Gold Corp.*, 349 F.3d 1189, 1194 (9th Cir. 2005)

(adopting close nexus test for post-confirmation jurisdiction); *In re Resorts Int'l Inc.*, 372 F.2d

154, 166-67 (3d Cir. 2004) (matters affecting implementation of confirmed plan typically have

the requisite close nexus); *Street v. The End of the Road Trust*, 386 B.R. 539, 545 (D.Del. 2008)

(the 'essential inquiry' in the post-confirmation context is whether there is a 'close nexus'

between the underlying claims and the bankruptcy proceeding. . . . When a matter "affects the

interpretation, implementation, consummation, execution, or administration of a confirmed

plan," it will have the requisite close nexus and render post-confirmation jurisdiction appropriate).

All of the requirements for jurisdiction are met here— there is plainly a "close nexus," and the Chapter 11 Plan provided for retention of jurisdiction over the very subject matter that is at the core of the NY Actions.

### 2. A Close Nexus Exists Between Plaintiffs' Claims in the NY Actions and the Bankruptcy Proceedings and Subsequent Litigation

The interpretation of numerous provisions of not only the applicable Loan Servicing Agreements, but also the Chapter 11 Plan, the Asset Purchase Agreement and the Sale and Confirmation Order, are at issue in the Nevada Litigation and also are the central issues in the NY Actions. It is this close and significant connection to the Nevada Bankruptcy Cases and the Chapter 11 Plan approved in the Nevada Bankruptcy Cases that establishes the bases under 28 U.S.C. § 1334 for subject matter jurisdiction in the Nevada District Court over the NY Actions.

For example, the Chapter 11 Plan (and the Sale and Confirmation Order) contain certain express obligations on the part of the Compass to collect sums from the "Investors" (the Lenders) and pay such sums to the post-confirmation trusts created under the Chapter 11 Plan, and contains concomitant obligations on the part of the Lenders to comply with the terms of the Loan Servicing Agreements, including with respect to the payment of fees, without regard to any inconsistent circular or other document. (*See* Weaver Decl. Exs. G (Chapter 11 Plan) at Section IV.E.1.d.ii.; and F (Sale and Confirmation Order) at paragraph 47.) These provisions are already are at issue in the Nevada Litigation, and are raised in Plaintiffs' claims in the NY Actions. A close nexus exists between the NY Actions and the Nevada cases, because resolution of the NY Actions will require interpretation of the Chapter 11 Plan.

Similarly, resolution of the NY Actions plainly requires interpretation of the Asset Purchase Agreement, an issue that the Chapter 11 Plan explicitly provides will be resolved by the Bankruptcy Court (and as to which the Nevada District Court has withdrawn the reference). This is so because Plaintiffs seek a declaration that notwithstanding the provisions in the Bankruptcy Court-approved documents, "Compass is prohibited from (i) demanding late charges on the total amount due under the Note following maturity, (ii) from demanding compounded default interest, (iii) obligated to pay the principal and interest due Plaintiff before paying itself late charges and default interest." (Weaver Decl. Ex. A (Bay Pompano Complaint) at p. 19.) Such relief sought by Plaintiffs in the NY Actions directly contradicts §7.3 of the Asset Purchase Agreement, which provides, *inter alia*, that "all servicing fees due pursuant to the terms stated in the servicing agreement . . . shall continue to be due and payable, and [Compass] shall collect such servicing fees and interest for its sole benefit on and after the Closing Date." (Weaver Decl. Ex. D, (Asset Purchase Agreement) at §7.3. )

Not only do the declaratory relief causes of action in the NY Actions require interpretation of the Chapter 11 Plan and Asset Purchase Agreement, but each of the remedies sought by Plaintiffs, and nearly all of Plaintiffs' allegations of wrongdoing by Compass, *have already been raised as part of the Nevada Litigation* on the very same loans at issue here. Plaintiffs allege in the NY Actions that Compass breached the Loan Servicing Agreement, breached its fiduciary duty to the Lenders, and was negligent in its servicing of the loans. Likewise, in the Nevada Litigation, the plaintiffs allege that Compass breached its fiduciary duty to the lenders by "taking funds that were available to pay accrued interest to Plaintiffs to pay itself Default Interest, Late Fees, and Other Fees instead." (Weaver Decl. Ex. I (Nevada Complaint) at 25.)

The claims asserted in the NY Actions are substantively identical to the claims already asserted in the Nevada Litigation, *i.e.*, that Compass is obligated to apply all payments to regular interest and principal, before such payments are applied to default interest and late fees, which, Compass asserts, are payable to Compass first under the Loan Servicing Agreements and the underlying notes. (*See* Weaver Decl. Ex. I (Nevada Complaint) at p. 21.) Indeed, this priority of payment or "waterfall" issue has already been briefed in the Nevada Litigation for certain loans. On November 21, 2007, Compass filed a motion seeking a judicial determination of the waterfall of payments with respect to the loan originated on October 29, 2004 by Debtor USA Commercial Mortgage to La Hacienda Estates, LLC (the "La Hacienda Loan" and the "La Hacienda Motion"), which is another loan for which Compass acquired the servicing rights pursuant to the Asset Purchase Agreement. Specifically, Compass sought a judicial determination that Compass, pursuant to the Asset Purchase Agreement, the Sale and Confirmation Order, the Loan Servicing Agreements, the terms of the note executed by the borrower in the La Hacienda Loan, and the custom and practice of the loan servicing industry with respect to commercial mortgage loans, was entitled to collect default interest, accrued servicing fees, and recover sums expended as servicer advances before payment of principal and interest to the Investors (or Direct Lenders).

The motion has been fully briefed and is pending before the Nevada District Court. Furthermore, on March 31, 2007, Compass filed a motion in the Nevada Litigation seeking a determination of the "waterfall" with respect to the loan originated July 13, 2005, by Debtor USA Commercial Mortgage to 3685 San Fernando Road Partners, L.P. (the "San Fernando Loan"), another loan in which Compass acquired the servicing rights pursuant to the Asset Purchase Agreement. The time to respond to that motion has been extended by stipulation.

Moreover, significant and extensive discovery has been pursued in the Nevada Litigation relating to the "waterfall" issue.

Plaintiffs in the NY Actions also seek an accounting of "all Loan Payments, interests, late charges, penalties, and any other receipts or disbursements related to Loan." (Weaver Decl. Exs. A at p. 19; B at p. 16; and C at p.18.) In connection with the Injunction Order entered by the Nevada District Court on November 6, 2007 at the request of Compass, Compass filed with the Court an accounting that contains information substantially identical to that sought by Plaintiffs in the NY Actions.

Finally, as demonstrated above, Plaintiffs have already acknowledged in another federal court that the Nevada District Court has jurisdiction over the disposition of funds arising from administration of the Loan Servicing Agreements. In the chapter 11 bankruptcy case of one of the borrowers implicated in the NY Actions, Palm Harbor One, LLC, Plaintiffs entered into a Stipulation of Settlement with Compass and others, which provides that Compass is required to obtain an order from the Nevada District Court determining that the disposition of borrower funds pursuant to the Settlement of Stipulation does not violate the orders of the Nevada District Court. (See Weaver, Decl. Ex. S, at ¶3.5.) If Plaintiffs believed that their disputes with Compass over disposition of borrower payments have nothing to do with the Nevada Litigation, why would they require that Compass obtain an order from the Nevada District Court? Obviously, Plaintiffs understand that resolution of their purported claims against Compass require the intervention of the Nevada District Court. It does not make sense that Plaintiffs would believe that they could obtain full relief in the N.Y. State courts. Their attempted end run around the Nevada District Court's jurisdiction over the Loan Servicing Agreements and related disputes should not be honored.

3. **The Chapter 11 Plan and the Sale and Confirmation Order Expressly Provide for the Retention of Bankruptcy Jurisdiction Over Disputes Regarding the Asset Purchase Agreement and the Loan Servicing Agreements**

Pursuant to the Chapter 11 Plan, the Nevada Bankruptcy Court *retained exclusive jurisdiction* to resolve "all matters related to the transfer of the Acquired Assets to [Compass]" and "all matters related to the Loan Servicing Agreements." (Weaver Decl. Ex. G (Chapter 11 Plan) at p. 79.) Similarly, the Sale and Confirmation Order explicitly stated that the Nevada Bankruptcy Court *retained jurisdiction* to enforce and implement the terms of the Asset Purchase Agreement. (Weaver Decl. Exs. F (Sale and Confirmation Order) at ¶ 23; and H (Bankruptcy Court Findings) at ¶ V ("the Court's retention of jurisdiction as set forth in Article VIII Section D of the Plan is appropriate and comports with the parameters contained in 28 U.S.C. § 157").) Therefore, the second component of the close nexus test—whether the Chapter 11 Plan provided for retention of jurisdiction—is met.

Moreover, both the Nevada Bankruptcy Court and the Nevada District Court already have determined that they have subject matter jurisdiction to hear the Nevada Litigation, including the breach of contract, breach of fiduciary duty, and declaratory judgment claims that are substantially identical to the claims raised in the NY Actions. (*See* Weaver Decl. Exs. M (June 20, 2007 Order of the Nevada Bankruptcy Court) at p. 16; and N (Transcript of the August 27, 2007 Proceedings before the Nevada District Court) at p. 24.) There can be no doubt that the Nevada District Court intends to resolve the disputes in the Nevada Litigation, and the docket clearly so reflects. The interests of justice call for one final resolution of such issues unencumbered by duplicative litigation in New York.

4. ***In re Petrie* Requires that the Nevada District Court Resolve this Dispute Between Non-Debtor Third Parties**

In a case with facts and legal issues very similar to those in the instant proceeding, *In re Petrie, Retail, Inc.,* 304 F.3d 223 (2d. Cir. 2002) ("*Petrie*"), the Court of Appeals for the Second Circuit considered the scope of post-confirmation bankruptcy subject matter jurisdiction over disputes between non-debtor third parties (like the disputes between Compass and the Investors). In *Petrie,* in connection with confirmation of a chapter 11 plan, the bankruptcy court entered an order approving an asset purchase agreement and the sale of the debtors' assets to Marianne, Ltd. As was the case for Compass's purchase of the servicing rights, (a) the chapter 11 plan in *Petrie* incorporated the terms of the sale order, and (b) the chapter 11 plan became effective when the sale closed. *Id.* at 226. Soon thereafter, Luan Investment, S.E., a landlord affected by the sale, filed suit in Puerto Rico against the purchaser Marianne seeking a determination that Marianne was in default under the lease, and Marianne filed suit in the bankruptcy court to enforce the terms of the sale and plan confirmation orders. *Id.* at 227. The litigation posture in *Petrie* is nearly identical to that in the Nevada Litigation and NY Actions, where one party sues for purported breaches of contracts that the purchaser had acquired from the bankruptcy estate, and the purchaser seeks bankruptcy court jurisdiction and enforcement orders.

In connection with the two lawsuits, the bankruptcy court in *Petrie* entered an order granting purchaser Marianne's motion to enjoin Luan from prosecuting its Puerto Rico lawsuit against Marianne because, under the sale and confirmation orders, the bankruptcy court had retained jurisdiction to interpret the terms of the lease. *Petrie*, 304 F.3d at 227. On appeal, the U.S. District Court for the Southern District of New York affirmed, as did the Second Circuit. In affirming the District Court's decision that the bankruptcy court had subject matter over the dispute and personal jurisdiction over the parties, the Second Circuit noted that the dispute between Luan and Marianne was based upon "rights established in the sale order," that the

interpretation of sale orders implicates core bankruptcy proceedings, and a bankruptcy court retains post-confirmation jurisdiction to interpret its sale and confirmation orders. *Id.* at 229. Moreover, the dispute regarding the interpretation of the lease was already before the bankruptcy court. *Id.* at 231. Accordingly, the Second Circuit held that the bankruptcy court was correct in asserting its subject matter jurisdiction over Luan's claims that Marianne was in breach of the lease.

The Second Circuit's analysis in *Petrie* readily applies to the Nevada Litigation and the NY Actions. The interpretation of the Loan Servicing Agreements, including the ones arising in the NY Actions, is pending before the Nevada District Court. Resolution of the dispute involves interpreting and enforcing the Nevada Bankruptcy Court's Sale and Confirmation Order, the Asset Purchase Agreement and the Chapter 11 Plan. The Nevada Bankruptcy Court not only expressly retained exclusive jurisdiction over disputes involving the Asset Purchase Agreement and Loan Servicing Agreements in the Sale and Confirmation Order, but the Second Circuit's *Petrie* decision supports the propriety of the Nevada Bankruptcy and District Court's retention of post-confirmation subject matter jurisdiction over these disputes.

**B.  THE CLAIMS IN THE NY ACTIONS AND THE NEVADA LITIGATION INVOLVE THE SAME PROPERTY AND ARE SO SIMILAR THAT THEY MUST BE CONSOLIDATED TO AVOID THE POSSIBILITY OF INCONSISTENT RESULTS**

In considering a motion to transfer venue of an action related to pending bankruptcy proceedings, courts consider whether transferring venue would promote the efficient administration of the bankruptcy estate, judicial economy, timeliness, and fairness. *In re Manville Forest Products Corp.,* 896 F.2d 1384, 1391 (2d Cir. 1990) ("*Manville*"). Once it is determined that the civil proceeding that is the subject of the venue transfer motion has a close nexus to litigation pending in a bankruptcy case, the district in which the underlying bankruptcy

case is pending is presumed to be the appropriate district for hearing and determination of such related civil proceeding. *Id.*; *Committee of Asbestos Claimants of G-I Holding, Inc.*, 306 B.R. 746, 750 (S.D.N.Y. 2004). This is so because "[t]here is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided." *Manville*, 896 F.2d at 1391; *see also Asset Purchase Agreement Excelsior III L.P. v. Premiere Technologies, Inc.*, 49 F.Supp.2d 664, 668 (S.D.N.Y. 1999) ("It is well established that the existence of a related action pending in the transferee court weighs heavily towards transfer."). Here, a close nexus between the NY Actions and the Nevada Bankruptcy Cases has been unmistakably established; therefore, the Nevada District Court should be the district court to hear the NY Actions.

Moreover, the general rule that two competing but related disputes brought in different forums should be consolidated in the court in which the first action was brought is well established in the Second Circuit. *See, e.g.*, *In re Cuyahoga Equipment Corp.*, 980 F.2d 110, 116 (2d Cir. 1992); *Fort Howard Paper Co. v. William D. Witter, Inc.*, 787 F.2d 784, 790 (2d Cir. 1986); *William Gluckin & Co. v. International Playtex Corp.*, 407 F.2d 177, 178 (2d Cir. 1969). This general rule applies where, as here, substantially similar parties and claims are present in both courts. *See Factors Etc., Inc. v. Pro Arts, Inc.*, 579 F.2d 215, 218 (2d Cir. 1978), *cert. denied*, 440 U.S. 908 (1979). Here, the Nevada District Court is the court where the first action was brought and the court where substantive legal decisions have been made and others, on the core legal issues, may soon be made. The only way to avoid the great risk and cost of duplicative litigation is to transfer venue of the NY Actions to the Nevada District Court.

In addition, the time and effort already spent by a court, its "imprint" on consideration of the issues, also is a factor in determining which court should hear a related proceeding subject to a venue transfer motion. *In re Vienna Park Properties*, 125 B.R. 84, 86 (S.D.N.Y. 1991). The Nevada District Court undoubtedly already has a strong "imprint" on the resolution of the issues at the core of the NY Actions, as the extensive docket and appearances of myriad counsel in the Nevada Litigation demonstrates. Accordingly, venue should be transferred to the Nevada District Court.

Here, Plaintiffs in the NY Actions seek substantially the same relief, and make essentially the same allegations, as the plaintiffs in the Nevada Litigation. Plaintiffs in the NY Actions and the Nevada Litigation both seek a judicial determination of the "waterfall issue," and contend that Compass should be paid default interest and late fees only after Lenders are paid one hundred percent of the principal and accrued regular interest on the underlying notes. Compass's legal position is that default interest and late fees come first in the waterfall of payments. Both courts are being asked to decide the exact same issue, and there is a distinct possibility that if the two litigations are allowed to continue on parallel courses, the two courts could reach inconsistent results, at great expense to the parties and great cost to the administration of justice.

## C.    APPLICATION OF THE TRADITIONAL VENUE TRANSFER FACTORS SHOW THAT PLAINTIFFS WILL NOT BE PREJUDICED BY TRANSFER OF VENUE

Once a court determines that the transferee court has subject matter jurisdiction, the factors assessed in both Section 1404 and 1412 venue motions, in addition to the strong policy favoring litigation of related claims in the same tribunal, include: (1) the plaintiff's choice of forum; (2) the locus of the operative facts; (3) the location, convenience and relative means of the parties; (4) the convenience of witnesses; (5) the availability of process to compel the

attendance of witnesses; (6) the location of physical evidence; (7) the relative familiarity of court

with the applicable law; and (8) the interests of justice, including the interests of trial efficiency.

*In re Northwest Airlines Corp.,* 384 B.R. 51, 60 (S.D.N.Y. 2008).  In the instant case, a careful

analysis of each of these factors, on balance, weighs in favor of transfer to the District of

Nevada.

- *Plaintiff's Choice of Forum*

Although their principal place of business is Connecticut, Plaintiffs brought these actions

in the non-commercial part of the New York Supreme Court, County of New York.  Compass

removed the cases to this Court on the grounds that the cases have a significant connection to (a)

the Chapter 11 Plan and Asset Purchase Agreement approved in the Nevada Bankruptcy Cases,

and (b) the Nevada Litigation.  Accordingly, neither party has selected the Southern District of

New York as the best forum to adjudicate this case.  Plaintiffs, moreover, will not be prejudiced

by a transfer of venue to the District of Nevada.  Plaintiffs purchased their interests in these loans

knowing full well that they were already subject to the jurisdiction of the Nevada Bankruptcy

Court.  Plaintiffs' Counsel, DLA Piper US LLC,  calls itself "the world's largest law firm," with

offices in Las Vegas, Nevada, where the Nevada District Court sits.  Lead counsel for Plaintiff is

a resident of DLA Piper's Los Angeles office.  And Plaintiff itself has its principal place of

business in Connecticut, not New York.

Moreover, the instant cases principally involve the interpretation of several contracts,

including the Chapter 11 Plan, the Asset Purchase Agreement, and the relevant Loan Servicing

Agreements, which is not likely to require the physical presence of Plaintiffs.  Indeed, transfer to

the District of Nevada is likely to result in a substantial cost savings for Plaintiffs, given that the

Nevada District Court is already "up to speed" on the dispute and the relevant legal and factual questions presented.

- *The Locus of the Operative Facts*

This factor weighs heavily in favor of transferring the instant case to the District of Nevada. Debtors were engaged in the business of originating and servicing commercial real property loans. Each of the Notes underlying the loans that are the subject of the NY Actions states (i) that it was executed in Nevada, and (ii) it is to be governed by Nevada law, and the Bay Pompano and Gramercy notes each contain the borrower's consent to personal jurisdiction in Nevada. (Weaver Decl. Exs. O (Bay Pompano Note) at ¶19; P (Gramercy Note) at ¶ 18; and Q (Palm Harbor Note) at ¶ 16.) Similarly, the applicable Loan Servicing Agreements between Compass and the Lenders (including Plaintiffs in the NY Action) contain a choice of law clause reciting that Nevada law is to govern any dispute. (Weaver Decl. Ex. E (Loan Servicing Agreement) at ¶13.) Similarly, the Asset Purchase Agreement is governed by Nevada law. (Weaver Decl. Ex. D (Asset Purchase Agreement) at §11.11.)

When the Debtors filed for bankruptcy, they did so in Nevada, and the Nevada Bankruptcy Court oversaw the administration of the Nevada Bankruptcy Cases and the initial litigation related to the interpretation of the Loan Servicing Agreements. The key claims for relief in the NY Actions require the interpretation of the Bay Pompano Note, the Loan Servicing Agreements, the Chapter 11 Plan, the Sale and Confirmation Order, and the Asset Purchase Agreement, each of which closely touches and concerns Nevada, and none of which has any connection whatsoever to New York.

- *The Location, Convenience, and Relative Means of the Parties*

Plaintiffs' parent organization is a sophisticated hedge fund investor that purchased the beneficial interests of Lenders in each of the loans that are the subject of the NY Actions both

*during and after the Bankruptcy proceedings.* Plaintiff continues to solicit such beneficial interests even today. (*See* Weaver Decl. Ex. R (document from website of Pathfinder Partners, LLC, soliciting additional purchases of beneficial interest in Bay Pompano loan, the Gramercy Loan, and the Palm Harbor Loan.) In addition, Plaintiffs have engaged counsel, DLA Piper US LLC, that have offices in Las Vegas, where the Nevada District Court sits. Plaintiff itself is not a resident of the State of New York (indeed, the decision to file suit in state court in Defendant's forum seems calculated to defeat any attempt to remove and transfer venue to Nevada). It would be more convenient for both parties to litigate the instant cases in Nevada, where Debtor's bankruptcy took place, where the relevant agreements were executed, and which is the source of the underlying law that will decide the merits of the instant case.

- *The Convenience of Witnesses*

The Nevada District Court is a more convenient location for the witnesses likely to testify in the instant case. The borrower, Chris McKinney, and the property that is the subject of the Pompano Bay loan, are located in Florida. Chris McKinney has been identified by the both Compass and the plaintiffs in the Nevada Litigation as a potential witness in the Nevada Litigation. Other potential witnesses include Compass's managers and staff, other Lenders in the Bay Pompano loan, the Gramercy Loan and the Palm Harbor Loan, employees of each of the Debtors, and Lenders who participated in other loans originated and serviced by Debtors. Each of these witnesses is already likely to testify in the Nevada Litigation, and regarding substantially identical topics; therefore, transferring the instant case to the District of Nevada is likely to reduce the travel time, expense, and inconvenience for each of the witnesses.

- *The Availability of Process to Compel the Attendance of Witnesses*

A number of Plaintiffs' allegations in the NY Actions concern Compass's communications and actions with respect to the borrowers in the underlying loans (and substantially similar allegations are made in the Nevada Litigation). As a result, each of the borrowers is likely to be a key witness. None of the borrowers is a resident of New York and there is no indication that any of them are subject to personal jurisdiction in New York. In contrast, the Gramercy borrower and the Bay Pompano borrower have already consented to personal jurisdiction in Nevada, pursuant to the terms of their respective notes, while the Palm Harbor note recites that the venue of any action "brought in connection with the note" shall be Clark County, Nevada. (Weaver Decl. Exs. O (Bay Pompano Note); P (Gramercy Note); and Q (Palm Harbor Note).) In addition, Compass is subject to personal jurisdiction in Nevada, and, indeed, is already engaged in active litigation there. Consequently, the Nevada District Court is a superior forum for the availability of process to compel the attendance of witnesses.

- *The Location of Physical Evidence*

This factor is neutral. To the extent that physical evidence exists, it is not voluminous, and in this electronic age, is easily accessible in either the Nevada District Court and the Southern District of New York.

- *The Relative Familiarity of the Court With the Applicable Law*

This factor weighs strongly in favor of transfer of the instant case to the District of Nevada. Each Loan Servicing Agreement, including each applicable to the NY Actions, contains a choice of law provision establishing that the agreement "shall be construed in accordance with the laws of the State of Nevada." (Weaver Decl. Ex. E (Loan Servicing Agreement) at ¶ 13.) It is self-evident that the Nevada District Court has more experience in interpreting and applying

Nevada law than does a New York state or federal court. In addition, the Nevada District Court has devoted countless hours to consideration of the issues raised by the NY Actions.

- *The Interests of Justice, Including the Interests of Trial Efficiency*

Transfer of the instant case to the District of Nevada will promote the interests of justice because transfer will promote judicial economy, will allow complete relief between all of the stakeholders in the litigation, and will eliminate the possibility of inconsistent results, which is a very real possibility if these substantially identical matters are litigated separately, in different forums.

### III.    CONCLUSION

For the foregoing reasons Compass respectfully requests that this Court enter an order transferring venue of the NY Actions to the United States District Court, District of Nevada.

Dated:  June 26, 2008

MILBANK, TWEED, HADLEY & McCLOY LLP

By:  _____

Scott Edelman (SE 5247)
Daniel M. Perry (DP 6966)
1 Chase Manhattan Plaza
New York, NY  10005-1413
(212) 530-5000

*Attorneys for Defendants Compass Financial*
*Partners LLC and Compass USA SPE LLC*