UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------ X

CCM PATHFINDER POMPANO BAY, LLC,     :     INDEX NO.  08 CIV 5258
              Plaintiff,

                          :

     -against-

                          :

COMPASS FINANCIAL PARTNERS LLC
and COMPASS USA SPE LLC,     :
              Defendants.

------------------------------------     :

CCM PATHFINDER GRAMERCY, LLC,     INDEX NO.  08 CIV 5257
              Plaintiff,

                          :

     -against-

                          :

COMPASS FINANCIAL PARTNERS LLC
and COMPASS USA SPE LLC,     :
              Defendants.     :

------------------------------------     :

CCM PATHFINDER POMPANO BAY, LLC,     INDEX NO.  08 CIV 5298
              Plaintiff,

                          :

     -against-

                          :

COMPASS FINANCIAL PARTNERS LLC
and COMPASS USA SPE LLC,     :
              Defendants.

                          :

------------------------------------ X

## OPPOSITION OF PLAINTIFFS TO
## DEFENDANTS' MOTION FOR ORDER TRANSFERRING VENUE TO NEVADA

**DLA Piper US LLP**
**1251 Avenue of the Americas**
**New York, NY 10020**
**(212) 335-4500**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................... 1

II.   FACTS ........................................................................................................... 3

    A.    The Three Loans ................................................................................... 3

    B.    Compass Purchases Debtor's Loan Servicing Rights ........................... 4

    C.    The State Actions Seek Damages ......................................................... 4

        1.    Compass breaches section 11 of the Loan Servicing Agreements ................... 4

        2.    Compass breaches section 5 of the Loan Servicing Agreements ..................... 5

        3.    Compass claims the right to pay itself unconscionable default interest in breach of section 5 of the Loan Servicing Agreements ..................................... 6

    D.    Compass Is Negligent In Servicing The Loan ..................................... 7

    E.    The Nevada Action Seeks To Terminate Compass .............................. 8

    F.    Procedural Posture ............................................................................. 11

III.  ARGUMENT ............................................................................................... 12

    A.    The Burden Of Proof ......................................................................... 12

    B.    The Nevada District Court Lacks Subject Matter Jurisdiction ........... 12

        1.    There is No "Close Nexus" between the State Actions and Debtor's Bankruptcy ....................................................................................... 12

        2.    Mandatory Abstention Applies to the State Actions ........................ 16

        3.    The Plan Did Not Retain Jurisdiction Over the State Law Claims ................ 16

        4.    Compass' Reliance on Petrie Is Misplaced ..................................... 18

    C.    Traditional Factors Demonstrate That Compass' Motion Should Be Denied ................................................................................................ 19

        1.    Pathfinder's Choice of Venue Should Not be Disturbed .................. 20

        2.    The Locus Of Operative Facts is New York .................................... 20

        3.    The Location, Convenience and Relative Means of the Parties ........ 22

        4.    New York is More Convenient for the Witnesses ............................ 22

        5.    Availability of Process to Compel the Attendance of Witnesses ..... 23

        6.    The Physical Evidence is Located in New York ............................... 24

        7.    Familiarity of the Court with the Applicable Law ............................ 24

        8.    The Interest of Justice, Including the Interests of Trial Efficiency ................ 24

**TABLE OF CONTENTS**
**(continued)**

Page

IV.    CONCLUSION.............................................................................................. 25

WEST\21460808.3

## TABLE OF AUTHORITIES

Page

### CASES

*Bank of Louisiana v Craig's Stores (In re Craig's Stores)*,
266 F.3d 388 (5th Cir. 2001) ................................................................13

*Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc. )*,
372 F.3d 154 (3d Cir. 2004)................................................................13

*Central Sports Army Club v. Arena Assocs., Inc.*,
952 F.Supp. 181 (S.D.N.Y. 1997) ........................................................20

*Clarendon Nat'l Ins. Co. v. Pascual*,
2000 US Dist LEXIS 2881 (S.D.N.Y. 2000).........................................12

*Covanta Onondaga Ltd. v. Onondaga County Resource Recovery Agency*,
281 B.R. 809 (N.D.N.Y. 2002)..............................................................12

*Falise v.  American Tobacco Co.*,
241 B.R. 48 (E.D.N.Y. 1999) ................................................................12

*Globalnet Financial.com, Inc. v. Frank Crystal & Co.*,
449 F.3d 377 (2d Cir. 2006)..................................................................21

*Golden First Mortg. Corp. v. Berger*,
251 F. Supp. 2d 1132 (E.D.N.Y. 2003) ...........................................12, 19

*Goodman v. Phillip R. Curtis Enters., Inc.*,
809 F.2d 228 (4th Cir. 1987) ................................................................13

*In re Johns-Manville Corp.*,
7 F.3d 32 (2d Cir. 1993)........................................................................13

*Int'l Asset Recovery Corp. v. Thomson McKinnon Sec., Inc.*,
335 B.R. 520 (S.D.N.Y. 2005)..............................................................13

*Jenkins v. Wilson Freight Forwarding Co.*,
104 F. Supp. 422 (D.N.Y. 1952)............................................................23

*Luan Investment S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.)*,
304 F.3d 223 (2nd Cir. 2002)............................................................18, 19

## TABLE OF AUTHORITIES
### (continued)

Page

*Montana v. Goldin (In re Pegasus Gold Corp.),*
  394 F.3d 1189 (9th Cir. 2005) .................................................................13

*Mt. McKinley Ins. Co. v. Corning Inc.,*
  399 F.3d 436 (2d Cir. 2005).....................................................................19

*Penthouse Media Group v. Guccione (In re Gen. Media, Inc.),*
  335 B.R. 66 (Bankr. S.D.N.Y. 2005) .......................................................13

*Rahl v. Bande,*
  316 B.R. 127 (S.D.N.Y. 2004)..................................................................13

*S-Fer Int'l, Inc. v. Paladion Partners, Ltd.,*
  906 F.Supp. 211 (S.D.N.Y. 1995) ............................................................24

*Schultz v. Boy Scouts of Am., Inc.,*
  65 N.Y.2d 189 (1985)..........................................................................21, 22

*Toy Biz, Inc. v. Centuri Corp.,*
  990 F.Supp. 329 (S.D.N.Y. 1998) ......................................................12, 20

*Vassallo v. Niedermeyer,*
  495 F. Supp. 757 (S.D.N.Y. 1980) ...........................................................24

*Vornado Realty Trust v. Stop & Shop Supermarket Cos. (In re Bradlees, Inc.),*
  2005 U.S. Dist. LEXIS 725 (S.D.N.Y. 2005)......................................15, 16

## STATUTES

28 U.S.C. § 1332...........................................................................................18

28 U.S.C. § 1334...........................................................................................12

28 U.S.C. §1334............................................................................................13

28 U.S.C. § 1334(b) & 1452 .........................................................................18

28 U.S.C. §§ 1334(c)(2).................................................................................3

28 U.S.C. § 1404(a) ......................................................................................12

## I.    INTRODUCTION

By their Motion for Order Transferring Venue ("Motion"), defendants Compass Financial Partners LLC and Compass USA SPE LLC (collectively, "Compass"), residents of New York whose principal place of business is in New York, improperly seek to transfer three actions ("State Actions") pending in New York to Las Vegas to "consolidate" the State Actions with an action pending in the Nevada District Court ("Nevada Action") **which recently settled**.

First, the Nevada Action and State Actions involve different parties, claims and issues.

- The plaintiffs in the Nevada Action are 50 Nevada limited liability companies (collectively, "LLCs"), none of which includes CCM Pathfinder Pompano Bay, LLC and CCM Pathfinder Gramercy, LLC (collectively, "Pathfinder"), the sole plaintiffs in the State Actions.

- The defendants in the Nevada Action include not only Compass but also David Blatt, Boris Piskun, Silar Advisors, LP, and Silar Special Opportunities Fund, LP, none of whom is named as a defendant in the State Actions.

- The gravamen of the Nevada Action is whether Compass should be **terminated** as loan servicer under Nevada Revised Statutes 645B.073 and 645B.330 because it lacks authority to act for the Nevada plaintiffs.  The gravamen of the State Actions is whether Compass should pay **damages** to Pathfinder for breach of its contractual and fiduciary obligations.  The Nevada Action and State Actions allege different claims and seek different remedies under different contracts.

Second, the transfer of the State Actions from New York to Nevada would be unjust, unfair and prejudicial to Pathfinder.  It is undisputed that (a) Pathfinder is a resident of New York, (b) Compass is a resident of New York, (c) Compass' principals and witnesses are located

in New York, (d) the physical evidence (i.e., Compass' loan servicing records) is located in New York, (e) Pathfinder's choice of forum is New York, and (f) New York has a substantial interest in adjudicating disputes between its citizens.

Compass seeks to transfer and consolidate the State Actions (which belong in New York) with the Nevada Action in order to delay and hinder the trial of the State Actions. Compass knows that the Nevada Action has been brought to a "standstill" as a result of the alleged misconduct of the Nevada Action plaintiffs. By attempting to consolidate the State Actions with the Nevada Action, Compass is hoping to bring the State Actions to a standstill as well.

Compass claims that the State Actions should be transferred to Nevada because Pathfinder is represented by DLA Piper, "the world's largest law firm." DLA Piper has fewer than five attorneys in its Nevada office and hundreds in its New York office. And, while Pathfinder's lead attorney is licensed and admitted to practice law in New York, she is not admitted to practice law in Nevada. Moreover, by Compass' own logic, the State Actions should remain in New York because Compass is represented by Milbank, Tweed, Hadley & McCloy LLP – a renowned New York firm, which has more than 360 attorneys in its New York office.

Third, and most important, the State Actions should not be transferred to Nevada, as a matter of law, because the Nevada District Court lacks subject matter jurisdiction. Unlike the Nevada plaintiffs who filed the Nevada Action against Compass and other defendants in the Nevada District Court based on diversity jurisdiction, there is no diversity jurisdiction in the State Actions because both Pathfinder and Compass are citizens of New York.

Compass' claim that the State Actions purportedly "arise in or are related to" the administration of Debtor's[1] estate is without merit because the Debtor's Plan was confirmed one

---

[1]    The term "Debtor" refers to the debtor USA Commercial Mortgage Company, Nevada Bankruptcy Court Case No. 06-10755 LBR.  The term "Plan" refers to the Debtor's Third Amended Plain of Reorganization.

and one half years ago. Indeed, the State Actions are subject to "mandatory abstention" and remand under 28 U.S.C. §§ 1334(c)(2) and 1452 because they involve state law claims between non-debtor parties that have no impact on the administration of the Debtor's estate.

For these reasons, and others, Compass' Motion should be denied.

## II.    FACTS

### A.    The Three Loans

Debtor was "in the business of originating and servicing commercial real property loans, and raised funds by soliciting individuals and entities ... to invest in ... the loans." For each of the three loans ("Loans") at issue in the State Actions (described below), Debtor entered into separate loan servicing agreements with Pathfinder (the "Loan Servicing Agreements").

Gramercy Court, Ltd., as borrower, obtained a $34,384,500 loan ("Gramercy Loan") from numerous lenders ("Gramercy Lenders"), as evidenced by a promissory note dated June 25, 2004 ("Gramercy Note") secured by a mortgage on a condominium project in Texas. Debtor, as loan servicer, entered into a separate loan servicing agreement with each Gramercy Lender.

Bay Pompano Beach, LLC obtained a $32,000,000 loan ("Bay Pompano Loan") from 391 lenders ("Bay Pompano Lenders"), as evidenced by a promissory note dated June 20, 2005 ("Bay Pompano Note") secured by a mortgage on a condominium conversion project in Broward County, Florida. Debtor entered into separate loan servicing agreements with each lender.

Palm Harbor One, LLC obtained a $29,000,000 loan ("Palm Harbor Loan") from 292 lenders ("Palm Harbor Lenders"), as evidenced by a promissory note dated November 28, 2005 ("Palm Harbor Note"), secured by a mortgage on a condominium conversion project in Pinellas County, Florida. Debtor entered into separate loan servicing agreements with each lender.

Pathfinder acquired the interests of at least 74 Gramercy Lenders, 83 Bay Pompano Lenders (over 21%), and 80 Palm Harbor Lenders (over 27%).

### B.    Compass Purchases Debtor's Loan Servicing Rights

On April 11, 2006, Debtor filed a petition in the Nevada Bankruptcy Court.  On February 16, 2007, Compass purchased, among other things, Debtor's interests in the Loans and rights to service the Loans under the Loan Servicing Agreements pursuant to an Order Confirming the Debtors' Third Amended Plan of Reorganization ("Plan").  (Declaration of John D. Spurling in Support of Opposition of Plaintiffs to Defendants' Motion for Order Transferring Venue to Nevada filed herewith, ("Spurling Decl."), Ex. A.)

Although Compass accuses Pathfinder of being an "opportunity fund" which acquired its interests in the Loans "at a discount," Compass advertises that it is in the business of acquiring "sub and nonperforming loans" at a discount.  (Declaration of Selby Jessup in Support of Opposition of Plaintiffs to Defendants' Motion for Order Transferring Venue to Nevada filed herewith, ("Jessup Decl."), Ex. A.)  On February 16, 2007, Compass issued a press release boasting that it paid only $67 million for $150 million of Debtor's assets.  (Declaration of Gabriel Weaver in Support of Motion for Order Transferring Venue filed by Compass, ("Weaver Decl."), Ex. I, p. 11.)

### C.    The State Actions Seek Damages.

#### 1.    Compass breaches section 11 of the Loan Servicing Agreements.

The Bay Pompano Note matured on June 20, 2006, at which time all amounts owed came due.  In February 2007, the borrower offered to pay off the Loan, including a $320,000 exit fee, provided Compass ceased to insist upon payment of compounded default interest and late charges, which Compass had improperly assessed.  As explained in sections C-2 and C-3, infra, Compass is not allowed to assess such compounded default interest or late charges under the terms of the Bay Pompano Note, and should have accepted the borrower's offer.

Without notifying Pathfinder, Compass unilaterally rejected the borrower's offer even

though the exit fee (which Compass is not otherwise entitled to receive) may have been sufficient to discharge both the default interest and late charges, had Compass assessed proper amounts in the first place.  By these over-reaching tactics, Compass breached, among others, section 11 of the Loan Servicing Agreements, which provides, in pertinent part:

> 11. Limited Power of Attorney.  With respect to each loan, Lender hereby agrees that [Compass] shall have full power and authority, and Lender hereby appoints [Compass] as its true and lawful attorney-in-fact to … **do all things and take all actions on behalf of Lender** which are necessary or convenient to effectuate this Agreement and its intent and **to protect Lender's interest under any note, deed of trust, guaranty, security agreement or other document pertaining to any Loan**….

In rejecting the borrower's offer to pay off the Bay Pompano Loan, without even notifying Pathfinder, Compass breached its fiduciary and contractual duties to Pathfinder by failing "to do all things and take all actions on behalf of Lender … to protect Lender's interest." Instead, Compass allowed the borrower to remain in default for one and one half years, without enforcing any remedies, so that default interest and late charges would accrue, which Compass then wrongly claimed are payable to itself before principal and interest are repaid to Pathfinder.[2]

### 2.    Compass breaches section 5 of the Loan Servicing Agreements.

After the Bay Pompano Note matured, Compass assessed $750,145 in late charges which the note expressly prohibits Compass from assessing.  When the note matured, there were only $9,651 in late charges outstanding.  However, Compass imposed a 5% late charge in the amount of $750,145 **on the total amount due under the Bay Pompano Note at maturity**, claiming that such amount is payable to Compass before any principal and interest are repaid to Pathfinder.

The "terms of the Note" prohibit Compass from assessing a late charge on the total amount due after maturity.  Section 8 of the Bay Pompano Note provides, in pertinent part:

---

[2] Compass engaged in similar acts with respect to the Gramercy Loan.

8. Late Charge. … Notwithstanding anything to the contrary contained in this Note, **this five percent (5%) late charge** will apply to any monthly interest payment that is not made when due and **will not apply to the total amount due under this Note if this Note is** accelerated as permitted by this Note or any other Loan Document or **not paid on the maturity date.**

Nevertheless, Compass assessed a 5% late charge on "the total amount due ... on the maturity date," in breach of its obligations to Pathfinder under the Loan Servicing Agreements.

Similarly, Compass collected only $2,812 in late charges from the borrower under the Palm Harbor Note. Section 5 of the Loan Servicing Agreements provides, in pertinent part:

5. Compensation to USA for Loan Servicing. Lender authorizes [Compass] to retain ... (b) **any late charges collected from the Borrower pursuant to the terms of the Note**….

Nevertheless, Compass' accounting of the Palm Harbor Loan shows that Compass is claiming at least $1,385,049 in late charges that Compass has not collected from the borrower as well as $750,145 in late charges that Compass did not collect under the Bay Pompano Loan. Similarly, Compass assessed $2,711,502 in late charges on the Gramercy Loan, even though such late charges were never collected from the borrower. By so doing, Compass has breached its obligations to Pathfinder under section 5 of the Loan Servicing Agreements.

**3.    Compass claims the right to pay itself unconscionable default interest in breach of section 5 of the Loan Servicing Agreements.**

Compass breached section 5 of the Loan Servicing Agreements by compounding the default interest due under the Bay Pompano Note. The note provides that non-default interest (13%) is to be compounded monthly, but does not allow default interest (another 7%) to be compounded at all. Section 1 of the Bay Pompano Note regarding non-default interest provides:

1. Interest Rate. Interest at the rate of thirteen percent (13%) per annum on the outstanding balance of principal evidenced by this Note shall accrue as follows…. **Accrued but unpaid interest shall be compounded monthly.** This will result in a slightly higher interest rate than that stated.

By contrast, section 9 of the note regarding default interest does not provide for compounding:

> 9.   Default Rate.  From and after the Maturity Date or, if any Event of
> Default occurs and is not timely cured, from the date that is ten (10) days
> after the date the payment was due, through and including the date that
> such default is cured, at the option of the holder hereof, all amounts
> owing under the Note and all sums owing under all of the Loan
> Documents shall bear interest at a default rate equal to twenty percent
> (20%) per annum ("Default Rate").  Such interest shall be paid on the
> first day of each month thereafter, or on demand if sooner demanded.

Nevertheless, Compass claims that compounded default interest which it never collected from the borrower is owed to Compass before any principal and interest are repaid to Pathfinder.

The Loan Servicing Agreements, which control the contractual relationship between Compass and Pathfinder, do not permit Compass to receive loan servicing fees, late charges or default interest ahead of the sums due and owing to Pathfinder under the loans.  To the contrary, the Loan Servicing Agreements contemplate that payments collected from the borrowers will be paid first to principal, then interest, then late charges and then other fees.  For example, Compass is obligated under section 2(c)(i) of the Loan Servicing Agreements to "promptly pay the proper parties, when and if due, principal, interest, late charges, insurance and other specified funds."

Similarly, Compass collected no default interest under the Loans, yet improperly assessed $1,633,716 in default interest for the Bay Pompano Loan, $1,509,269 in default interest for the Palm Harbor Loan and $8,805,327 in default interest for the Gramercy Loan.

### D.   Compass Is Negligent In Servicing The Loan.

Although the Bay Pompano Loan matured nearly two years ago, and has not been repaid – leaving millions of dollars outstanding – Compass waited months before initiating foreclosure. To date, Compass failed to seek the appointment of a receiver to capture the rents generated by the Bay Pompano property pending foreclosure, allowing the holder of a subordinate mortgage to seize them.  Similarly, although condominiums of the Bay Pompano property have been sold,

Compass did not obtain at least $6.5 million of the sale proceeds. Proceeds from the sales of condominium units of the Palm Harbor property are also missing in an untold amount.

On March 3, 2008, more than one and one-half years after the borrower defaulted on the Palm Harbor Loan, Compass and the borrower entered into a settlement agreement allowing Compass to foreclose on the Palm Harbor property or have it sold via a "363 sale" conducted by the Massachusetts Bankruptcy Court (not the Nevada Bankruptcy Court). Although Pathfinder repeatedly requested information regarding the "363 sale", Compass refused to provide the information to Pathfinder or to provide Pathfinder with a copy of the bid package for that sale.

As to the Gramercy Loan, after foreclosure, Compass failed to properly (i) manage and lease the Gramercy property, (ii) resolve deferred maintenance (even when offered financing by Pathfinder to do so), or (iii) market the property through qualified third party brokers. Compass also failed to provide timely and adequate information regarding the property to Pathfinder.

These, among others, are the matters at issue in the State Actions.

### E.    The Nevada Action Seeks To Terminate Compass.

The Nevada Action bears no resemblance to the State Actions. Donna Cangelosi ("Cangelosi"), one of hundreds of individuals who invested in the loans originated by Debtor, sought to terminate Compass as loan servicer, but lacked the ability to do so. Cangelosi began contacting other lenders to form an entity called the "Lenders Protection Group" ("LPG"). Cangelosi and LPG believed that Nevada Revised Statute 645B.073 grants lenders who own at least 51% of the loans the right to unilaterally terminate the servicer. In March 2007, Cangelosi and LPG began soliciting proxies to terminate the servicing rights that Compass acquired from the Debtor under an Asset Purchase Agreement consummated under the Debtor's Plan.

Cangelosi and LPG also believed they could unilaterally terminate Compass as loan servicer under Nevada Revised Statute 645B.330 on the ground that there is no valid power of

attorney authorizing Compass to act on behalf of the Nevada plaintiffs. On May 18, 2007,

Cangelosi wrote to borrowers of 50 different loans that "Compass is not authorized to act on

behalf of the lenders of the Loan for any purpose whatsoever" and threatened that "All payments

made to Compass shall be at your own peril." (Spurling Decl., Ex. B, p. 4.)

On May 21, 2007, the Nevada plaintiffs filed a Complaint for Declaratory Relief, Breach

of Contract, Breach of Fiduciary Duty, Tortious Breach of the Implied Covenant of Good Faith

and Fair Dealing, Constructive Fraud, Fraudulent Misrepresentation, Conversion, and Civil

Conspiracy with the Nevada District Court. (Weaver Decl., Ex. I.) The gravamen of the Nevada

Action is that Compass can be terminated by the Nevada plaintiffs in accordance with Nevada

statutes. For example, the Nevada Complaint alleges that:

- "pursuant to NAC 645B.073, Plaintiff's and other direct lenders have an absolute

  right to replace Compass as loan servicer," (Weaver Decl., Ex. I, p. 21, ¶92a);

- "a lender in a loan secured by real property has an absolute right to modify the

  terms of their promissory note and deed of trust to maximize their recovery,

  irrespective of the rights of any third-party loan servicer," (Id. at p. 22, ¶ 92c);

- "Compass no longer has a valid power of attorney to act on behalf of Plaintiffs"

  (Id. at p. 22, ¶ 92d); and

- Nevada plaintiffs "are entitled to terminate their Loan Servicing Agreements with

  Compass." (Id. at p. 22-23, ¶ 92g.)[3]

Section 3 of the Loan Servicing Agreements provides that:

Pursuant to NAC 645B.073, in the event of default, foreclosure, or other

---

[3]      The Nevada Action also included numerous loans, including a loan originated on October 29, 2004 by Debtor to La Hacienda Estates, LLC (the "La Hacienda Loan") and a loan originated on July 13, 2005 by Debtor to 3685 San Fernando Road Partners, L.P. (the "San Fernando Loan"). Pathfinder holds no interest in the La Hacienda Loan or the San Fernando Loan and neither is the subject of the State Actions. The La Hacienda and San Fernando Loans involve different notes, different loan servicing agreements, different borrowers and different properties.

matters that require action, if for any reason [Compass] fails to act on Lender's behalf as authorized herein, then Lender may, with approval of fifty-one percent (51%) or more of all of the holders of the beneficial interest of record in the Loan, act on behalf of such holders of beneficial interest of record....

Section 8 of the Loan Servicing Agreements provides that:

Lender may, by 30 days written notice to USA, terminate this agreement, and the power of attorney granted, if one is granted, under Section 11 of this Agreement, if [Compass] fails to perform its obligations hereunder.

Paragraph 14 of the Confirmation Order provides that:

**[I]n connection with any attempted post-Closing exercise of a Surviving Section 3 Right**: (a) the Direct Lenders must provide Compass at least thirty **(30) days prior written notice** of the intended exercise of such right **in accordance with section 8 of the Loan Servicing Agreement,** (b) Compass shall have the right to challenge the exercise of such Surviving Section 3 Right by filing a motion with this Court prior to the expiration of such thirty (30) day period to determine whether such Surviving Section 3 Right has been properly and validly exercised (the "Compass Motion") **and the Court shall retain jurisdiction to adjudicate any such disputes,** (c) in the event Compass timely files such Compass Motion, the effectiveness of the attempted exercise of such Surviving Section 3 Right shall be stayed pending this Court's entry of an order in respect of the Compass Motion, and (d) the post-Closing survival of such Surviving Section 3 Right shall not impair in any respect any rights or interests of Compass under the Loan Servicing Agreements, including, without limitation, its rights under Section 2(c)(iii) of the Loan Servicing Agreements.

(Spurling Decl., Ex. A.)

The Nevada District Court found Cangelosi in contempt for attempting to terminate Compass as loan servicer in ways that violated the Loan Servicing Agreements and the Confirmation Order. (Spurling Decl., Ex. B)

The Nevada Action was effectively stayed in January 2008. On January 22, 2008, the LLCs and Compass filed an Agreed Stipulation ("Standstill Agreement") with the Nevada District Court in which the parties agreed to "abatement of proceedings for the purpose of entering into mediation." At a hearing on April 28, 2008, the District Court extended the

standstill to June 2, 2008. (Spurling Decl., Exs. C, D & E.)  On June 25, 2008, the District

Court ordered that the Standstill Agreement "remain in force and effect."  (Jessup Decl., Ex. B.)

In addition, although a hearing was set for August 12, 2008 to terminate Compass as the

loan servicer ("Termination Hearing"), on June 25, 2008, counsel orally requested a continuance

of the Termination Hearing, pending "finalization" of a settlement reached by the parties.

(Jessup Decl. Ex. B.)  The Nevada District Court ordered the Termination Hearing "stayed for a

period of 70 days to be reset by order of the Court." Id.

Compass also misstates that the waterfall issue has been "briefed" in the Nevada District

Court.  On June 2, 2008, the LLCs pressed the Nevada District Court for a determination of the

waterfall issue.  The Nevada District Court stated that, "On the waterfall, **I'll await the parties'**

**request in an appropriately-pled motion for summary judgment**."  (Spurling Decl. Ex. F, p.

138.)  A review of the docket shows that no summary judgment has been filed or can be filed

given the Standstill Agreement staying the Nevada Action.

In any event, unlike the Nevada Action which seeks to terminate Compass under section

3 of the Loan Servicing Agreement and Nevada Revised Statutes 645B.073 and 645B.330, the

State Actions seek damages from Compass for breaches of sections 2, 5, and 11 of the Loan

Servicing Agreements, among other provisions, and for breach of fiduciary duty and negligence.

**F.    Procedural Posture**

On May 20, 2008, CCM Pathfinder Pompano Bay, LLC filed a Complaint regarding the

Bay Pompano Loan, which Compass removed on June 9, 2008 (Case No. 08CIV5258).  On May

22, 2008, CCM Pathfinder Gramercy, LLC filed a Complaint regarding the Gramercy Loan,

which Compass removed on June 10, 2008 (Case No. 08CIV5298).  On June 5, 2008, CCM

Pathfinder Pompano Bay, LLC filed a Complaint regarding the Palm Harbor Loan, which

Compass removed on June 10, 2008 (Case No. 08CIV5297).

## III.    ARGUMENT

### A.    The Burden Of Proof.

The moving party "bears the burden of showing the availability of an alternative forum

and that that forum is clearly more appropriate than the plaintiff's choice of forum." Toy Biz,

Inc. v. Centuri Corp., 990 F.Supp. 329, 330 (S.D.N.Y. 1998). "[D]eference to plaintiff's choice

of forum not only places the burden of proof on the defendant moving for a transfer, but is also a

factor to be considered in its own right." Clarendon Nat'l Ins. Co. v. Pascual, 2000 US Dist

LEXIS 2881, *13 (S.D.N.Y. 2000). "[D]efendant has the burden of establishing the propriety of

transfer by a clear and convincing showing." Golden First Mortg. Corp. v. Berger, 251 F. Supp.

2d 1132, 1141 (E.D.N.Y. 2003)

### B.    The Nevada District Court Lacks Subject Matter Jurisdiction.

28 U.S.C. § 1404(a) provides that, "For the convenience of parties and witnesses, in the

interest of justice, a district court may transfer any civil action to any other district or division

**where it might have been brought.**"  Thus, as a threshold requirement for transferring venue

under § 1404(a), Compass must show that the Nevada District Court would have jurisdiction

over the State Actions. As demonstrated below, and as explained more fully in Pathfinder's

Motion for Remand filed on June 26, 2008,[4] the Nevada District Court lacks jurisdiction.

#### 1.    There is No "Close Nexus" between the State Actions and Debtor's Bankruptcy.

Pursuant to 28 U.S.C. § 1334, bankruptcy courts have limited jurisdiction over lawsuits

that do not involve the debtor.  After a plan is confirmed, that jurisdiction is extremely limited.

"[B]ankruptcy jurisdiction is extremely limited after a plan has been confirmed." Falise v.

---

[4]      Because jurisdiction must be decided first before venue, the Court should decide Pathfinder's Motion for
Remand before deciding Compass's Motion for Transfer. Covanta Onondaga Ltd. v. Onondaga County Resource
Recovery Agency, 281 B.R. 809, 813 (N.D.N.Y. 2002) (Where party seeks to consolidate a state action with a
bankruptcy proceeding pending in another judicial district, "courts faced with cross motions to remand and change
of venue consider the remand motion first and, if remand is denied, turn to the motion for change of venue.").

American Tobacco Co., 241 B.R. 48, 58 (E.D.N.Y. 1999). "[A]ll courts that have addressed the
question have ruled that once confirmation occurs, the bankruptcy court's jurisdiction shrinks."
Penthouse Media Group v. Guccione (In re Gen. Media, Inc.), 335 B.R. 66, 73 (Bankr. S.D.N.Y.
2005) (citations omitted).

      "Of course, the Plan cannot retain subject matter jurisdiction over an action that does not
fall within the court's subject matter jurisdiction under 28 U.S.C. §1334." Int'l Asset Recovery
Corp. v. Thomson McKinnon Sec., Inc., 335 B.R. 520, 526 (S.D.N.Y. 2005) (citing In re Johns-
Manville Corp. 7 F.3d 32, 34-35 (2d Cir. 1993)); Binder v. Price Waterhouse & Co., LLP (In re
Resorts Int'l, Inc. ) 372 F.3d 154, 161 (3d Cir. 2004) (a court "cannot create that jurisdiction by
simply stating that it has jurisdiction in a confirmation or other order").

      In this Circuit and the Ninth Circuit (where the Nevada Bankruptcy Court is located),
more is required for post-confirmation jurisdiction than mere retention of jurisdiction in a plan.
There must be a "close nexus to the bankruptcy plan or proceeding, as when a matter affects the
interpretation, implementation, consummation, execution, or administration of the confirmed
plan...." Resorts Int'l, 372 F.3d at 168-69; Montana v. Goldin (In re Pegasus Gold Corp.), 394
F.3d 1189, 1194 (9th Cir. 2005); Bank of Louisiana v Craig's Stores (In re Craig's Stores), 266
F.3d 388, 390 (5th Cir. 2001); Goodman v. Phillip R. Curtis Enters., Inc., 809 F.2d 228, 232 (4th
Cir. 1987); Int'l Asset, 335 B.R. at 526; Rahl v. Bande, 316 B.R. 127, 133 (S.D.N.Y. 2004).

      The State Actions do not implicate the "interpretation, implementation, consummation,
execution, or administration" of the Debtor's Plan. The Plan was consummated and all assets
distributed long ago. Debtor is not a party to the State Actions, and those actions have no
impact on its bankruptcy estate or on any distributions under the Plan. (Spurling Decl., Exs. A &
G.) Thus, the requisite "close nexus" to the Debtor's Plan does not exist.

Nevertheless, Compass claims that a "close nexus" between the State Actions and the Debtor's Plan exists because the Plan contains "express obligations on the part of Compass to collect sums from the 'Investors' … and contains concomitant obligations on the part of the Lenders to comply with the terms of the Loan Servicing Agreements…." However, nothing in the State Actions has anything to do with Compass' obligation to collect sums from "Investors". Similarly, nothing in the State Actions concerns the lenders' compliance with the terms of the Loan Servicing Agreements. To the contrary, Pathfinder seeks to enforce Compass' obligations under the terms of the Loan Servicing Agreements under state law in the State Actions.

Compass also claims that the State Actions require interpretation of the Asset Purchase Agreement because Pathfinder seeks a declaration that Compass is prohibited from demanding exorbitant late charges, compounding default interest, and asserting priority over principal and interest due Pathfinder. As the State Actions make clear, and as Compass acknowledges, Compass' obligations not to charge exorbitant late charges and default interest or assert priority against Pathfinder are set forth in the Loan Servicing Agreements between Compass and Pathfinder, not the Asset Purchase Agreement between Compass and the Debtor. The Asset Purchase Agreement merely allowed Compass to purchase Debtor's rights under the Loan Servicing Agreements. Pathfinder does not dispute that Compass acquired those rights. The State Actions merely assert that Compass breached its obligations under the Loan Servicing Agreements it acquired. The Asset Purchase Agreement is irrelevant.

Compass claims that both the Nevada Action and the State Actions allege that Compass wrongly asserted priority to default interest and late fees. But, as Compass acknowledges, the test for establishing jurisdiction is a "close nexus to the bankruptcy plan or proceeding," not a close nexus to another lawsuit that has settled and has no impact on the bankruptcy Plan or

proceeding. The issue of priority with respect to default interest and late fees is governed by the

Loan Servicing Agreements, not the Asset Purchase Agreement or the Plan. The issue of priority

has nothing to do with the Plan (which was confirmed years ago) or the administration of the

Debtor's estate. This issue is purely a state law contract issue between nondebtor parties.

Finally, Compass claims that Pathfinder purportedly "acknowledged in another federal

court that the Nevada District Court has jurisdiction over the disposition of funds arising from

administration of the Loan Servicing Agreements" in the Stipulation of Settlement filed with the

Massachusetts Bankruptcy Court presiding over the bankruptcy case of Palm Harbor. Paragraph

3.5 of the Stipulation of Settlement provides that:

> Contemporaneously with the filing of a motion seeking Court
> approval of this Stipulation, Compass shall file a Stipulated Order
> or a motion in the Nevada Case clarifying that Compass may make
> the payments required to be made to the Committee [i.e., Official
> Committee of Unsecured Creditors of Palm Harbor] pursuant to
> Article III of this Stipulation (if any), and that **such payments
> would not be inconsistent with the Preliminary Injunction
> Order entered in the Nevada Case** on November 6, 2007.

At best, paragraph 3.5 of the Stipulation of Settlement "acknowledges" that the Nevada

District Court has jurisdiction to determine matters governed by its own Preliminary Injunction

Order. The State Actions seek damages from Compass, not a turnover of the funds at issue in the

Preliminary Injunction Order. Accordingly, Compass' claim that Pathfinder "acknowledged"

that the Nevada District Court has jurisdiction is disingenuous.

In Vornado Realty Trust, the underlying dispute regarded fees due under a "Master

Agreement" relating to various leases. Vornado Realty Trust v. Stop & Shop Supermarket Cos.

(In re Bradlees, Inc.), 2005 U.S. Dist. LEXIS 725 (S.D.N.Y. 2005). Defendant removed a

declaratory relief claim to federal court, arguing that the action required the interpretation of a

bankruptcy court order. The District Court upheld the bankruptcy judge's ruling that the action

was "a contract dispute between non-diverse parties that is only tangentially related to the [debtor's] bankruptcy case." Id. at *9. The District Court reasoned that although the bankruptcy court's order modified a portion of the Master Agreement, the duties of the parties was "derived from the Master Agreement itself." Id. at *12. In remanding the action back to the New York Supreme Court, the Court stated that such an "attempt to manufacture bankruptcy jurisdiction" constituted forum shopping by defendant. Id. at *22-23. No less is true here.

In sum, the State Actions require the "interpretation" of the Loan Servicing Agreements, not the Asset Purchase Agreement. Just because Compass purchased the Loan Servicing Agreements under the Asset Purchase Agreement does not mean that the interpretation of the Loan Servicing Agreements falls within the purview of the Nevada Bankruptcy Court.

### 2.    Mandatory Abstention Applies To The State Actions.

As explained in Pathfinder's Motion for Remand (incorporated by reference herein), even if the Nevada Action and the State Actions both challenge Compass' asserted priority to default interest and late fees, the State Actions are subject to mandatory abstention and remand because they involve state law claims between nondebtor parties that have no impact on the administration of the Debtor's estate, and diversity jurisdiction simply does not exist.

### 3.    The Plan Did Not Retain Jurisdiction Over The State Law Claims.

Compass claims that the Nevada Bankruptcy Court retained exclusive jurisdiction over "all matters related to the Loan Servicing Agreements." Not so. The Nevada Bankruptcy Court retained jurisdiction only to the extent that the dispute related to the Chapter 11 Cases before it. The State Actions concern Pathfinder's claims for damages against third party Compass, not the Debtor, for post-confirmation breaches. The State Actions "do not arise out of and relate to the Chapter 11 Cases," as required under Section VIII-D of the Plan.

The Bankruptcy Court's Order confirming the Plan makes clear that the Bankruptcy

Court retained jurisdiction only as to the termination of Compass as loan servicer under section 3

of the Loan Servicing Agreements.  Paragraph 14 of the Confirmation Order provides:

> **[I]n connection with any attempted post-Closing exercise of a
> Surviving Section 3 Right**: (a) the Direct Lenders must provide
> Compass at least thirty (30) days prior written notice of the
> intended exercise of such right in accordance with section 8 of the
> Loan Servicing Agreement, (b) Compass shall have the right to
> challenge the exercise of such Surviving Section 3 Right by filing
> a motion with this Court prior to the expiration of such thirty (30)
> day period to determine whether such Surviving Section 3 Right
> has been properly and validly exercised (the "Compass Motion")
> **and the Court shall retain jurisdiction to adjudicate any such
> disputes**, (c) in the event Compass timely files such Compass
> Motion, the effectiveness of the attempted exercise of such
> Surviving Section 3 Right shall be stayed pending this Court's
> entry of an order in respect of the Compass Motion, and (d) the
> post-Closing survival of such Surviving Section 3 Right shall not
> impair in any respect any rights or interests of Compass under the
> Loan Servicing Agreements, including, without limitation, its
> rights under Section 2(c)(iii) of the Loan Servicing Agreement.

(Spurling Decl., Ex. A.)  Unlike the Nevada Action, however, the State Actions do not seek to

terminate Compass as loan servicer under section 3 of the Loan Servicing Agreements.

Indeed, the Confirmation Order expressly states that disputes between Compass and any

of the lenders under the Loan Servicing Agreements that do not involve terminating Compass

under the "Surviving Section 3 Right" may be brought in any "court of competent jurisdiction."

(Spurling Decl. Ex. A, ¶ 82.)  The Bankruptcy Court did not retain jurisdiction over litigation

involving the interpretation and enforcement of the Loan Servicing Agreements.  The Nevada

Bankruptcy Court retained jurisdiction only over "any attempted post-Closing exercise of a

Surviving Section 3 Right" to terminate Compass – which is not at issue in the State Actions.

Compass' argument that the Nevada District Court "already have determined" that it has

subject matter jurisdiction is misleading.  The Nevada plaintiffs filed the Nevada Action under

"section 1332" diversity jurisdiction.  Just because the Nevada District Court has diversity

jurisdiction of the Nevada Action under 28 U.S.C. § 1332 as to those plaintiffs does not mean

that it also has "arising in or related to bankruptcy" jurisdiction of the State Actions under 28

U.S.C. § 1334(b) & 1452.  To the contrary, as the State Actions involve state law claims between

nondebtor citizens of New York, the Nevada District Court lacks jurisdiction over those actions.

### 4.    Compass's Reliance On *Petrie* Is Misplaced.

In Luan Investment S.E. v. Franklin 145 Corp. (In re Petrie Retail, Inc.), 304 F.3d 223,

225 (2nd Cir. 2002), plaintiff sought amounts under a lease from the debtor and its assignee.  The

assignee acquired its rights in the lease from a bankruptcy court order which "enjoined parties to

the leases that were assigned from asserting against [assignee] any default or breach under the

leases that was outstanding as of the date of the closing."  Id. at 226.  Regardless, plaintiff

asserted amounts against assignee which the bankruptcy court already "defined as excluded

liabilities under the sale order, the plan of reorganization, and the confirmation order."  When

assignee filed a "plan consummation motion" in bankruptcy court (id. at 227), the bankruptcy

court determined it had jurisdiction over the motion.  The Second Circuit affirmed.

The Second Circuit reasoned that the court had subject matter jurisdiction because "the

plan consummation motion sought enforcement of a pre-existing injunction issued as part of the

bankruptcy court's sale order and confirmation order," and a "bankruptcy court retains post-

confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise

over a bankruptcy plan of reorganization."  Id. at 230.  The Second Circuit noted that plaintiff's

demand for additional rent constituted "excluded liabilities as defined in the sale order."  Id.

Unlike Petrie, Compass' obligations to comply with the terms of the Loan Servicing

Agreement are not "excluded liabilities" under Debtor's Plan or the Confirmation Order.  To the

contrary, paragraph 82 of the Confirmation Order specifically provides that "[n]othing contained

in the Asset Purchase Agreement shall modify the obligations owed to the Lenders by Compass

as the loan servicer or rights of the Lenders against Compass as the loan servicer (or the rights of

Compass as the loan servicer against the Lenders) under the applicable Loan Servicing

Agreements and otherwise applicable law." (Spurling Decl. Ex. A.)  The State Actions involve

neither interpretation nor enforcement of the Confirmation Order because nothing in the

Confirmation Order "excluded liabilities" that Pathfinder seeks to impose against Compass in the

State Actions.   As the Second Circuit explained in Mt. McKinley Ins. Co. v. Corning Inc., 399

F.3d 436 (2d Cir. 2005),

> We held that the dispute "uniquely affected and was uniquely
> affected by core bankruptcy functions because the dispute between
> [the two parties] was based on rights established in the sale order,
> the plan consummation motion sought enforcement of a pre-
> existing injunction issued in the bankruptcy court's sale order, and
> the dispute involved an issue already before the bankruptcy court
> as part of its consideration of [one party's] claim against the
> estate."  Because Petrie addressed a specific factual situation that
> demonstrated the dispute's unique effect on a reorganization in
> bankruptcy court and because none of the factors Petrie
> emphasized is present in this case, Petrie is not relevant.

Similarly, no Petrie factors are present in the State Actions.  Thus, Petrie is "not relevant."

### C.    Traditional Factors Demonstrate That Compass' Motion Should Be Denied.

"[D]efendant has the burden of establishing the propriety of transfer by a clear and

convincing showing." Golden First Mortg. Corp. v. Berger, 251 F. Supp. 2d 1132, 1141

(E.D.N.Y. 2003).  To determine whether transfer is appropriate, the following factors are

weighed: (1) plaintiff's choice of forum; (2) convenience of the parties; (3) convenience of the

witnesses; (4) relative means of the parties; (5) locus of operative facts and relative ease of

access to sources of proof; (6) attendance of witnesses; (7) the court's familiar with the

substantive law to be applied; and (8)  the interest of justice, including trial efficiency.  Id.  Even

if the Nevada District Court has subject matter jurisdiction (and it does not), the above factors

weigh in favor of denying the Motion for transfer.

### 1.    Pathfinder's Choice of Venue Should Not Be Disturbed.

"The plaintiff's choice of forum is to be given substantial weight and should not be disturbed unless the balance of convenience and justice weigh heavily in favor of defendant's proposed forum." Toy Biz, Inc. v. Centuri Corp., 990 F.Supp. 329, 330 (S.D.N.Y. 1998). Indeed, "courts on this circuit are loathe to disturb a plaintiff's choice of forum absent a showing 'that the balance of convenience and justice weighs heavily in the favor of transfer.'" Central Sports Army Club v. Arena Assocs., Inc., 952 F.Supp. 181, 189 (S.D.N.Y. 1997).

Pathfinder, a citizen of New York, chose New York as the forum to litigate its State Actions. Compass has its principal place of business in New York, and Compass's manager is a resident of New York. As Compass conducts its business out of New York, the acts giving rise to Pathfinder's tort claims arose in New York. Thus, New York is the proper venue.

Compass claims that venue is proper in Nevada. However, as demonstrated above, there is, at best, a tenuous connection between Pathfinder's State Actions and the Nevada Action, as the claims, issues, and parties are different in the Nevada Action, which has settled. Accordingly, Pathfinder's choice of forum should not be disturbed.

### 2.    The Locus Of Operative Facts Is New York.

The acts giving rise to Pathfinder's claims occurred in New York. Indeed, Compass itself has admitted and argued that it does not transact business in Nevada, as it must, because it does so in New York. (Spurling Decl. Ex. H p. 7.) Nevertheless, Compass claims that this factor purportedly "weighs heavily" in favor of transferring venue because the Debtor was engaged in business in Nevada and each of the **Notes** governing the loans was executed in Nevada and governed by Nevada law. Compass's argument is nonsense. Pathfinder's claims are against Compass, a New York company, not against the Debtor. Pathfinder's contract claim against Compass is for breach of the Loan Servicing Agreements, not breach of the Notes or breach of

the Asset Purchase Agreement.

Pathfinder acknowledges that, as Compass points out, the Loan Service Agreements provide that they are governed by Nevada law. Assuming that Nevada agreements purchased by a New York company, which is breached in New York, is still governed by Nevada law, that does not "weigh heavily" in favor of transferring venue to Nevada because New York courts are just as capable as the Nevada courts of understanding Nevada contract law.

Compass ignores the fact that in addition to a claim for breach of contract, Pathfinder also alleged multiple tort claims (breach of fiduciary duty and negligence) committed by Compass in New York which requires adjudication under New York law. In Globalnet Financial.com, Inc. v. Frank Crystal & Co., 449 F.3d 377, 384 (2d Cir. 2006), there was a dispute as to whether New York or Florida law applied to plaintiff's tort claims. Defendant insurance broker's principal place of business was in New York and a most of the conduct giving rise to the tort occurred in defendant's New York office. The Second Circuit held that "the relevant analytical approach to choice of law in tort actions in New York is the 'interest analysis.'" Id. at 384 (citing Schultz v. Boy Scouts of Am., Inc., 65 N.Y.2d 189, 197 (1985). The "interest analysis" requires "that the law of the jurisdiction having the greatest interest in the litigation will be applied and the only facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict." Id. If the tort law at issue is a "conduct-regulating" law (e.g. deterring conduct amounting to breach of fiduciary duty and negligence), "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." Id. Because the defendant had its principal place of business in New York and a majority of the acts giving rise to the tort occurred in defendant's New York office, the Court held that New York law applied. Id. at 385. The

Court also noted that New York had a "significant interest in regulating the conduct of brokers, insurance agents, premium finance companies and insurers licensed within the state." Id.

The same is true here. Compass is a private equity firm with its principal place of business in New York. Compass itself has admitted that it did not "transact" business within Nevada. (Spurling Decl. Ex. H p. 7.) Compass serviced the Loans out of New York and its management team is located in New York. As the Loans were serviced in New York, the acts giving rise to Pathfinder's tort claims occurred in New York. New York has a significant interest in regulating its companies, like Compass, that conduct business within its borders. Accordingly, New York law applies to Pathfinder's tort actions.

### 3.    The Location, Convenience, and Relative Means Of The Parties.

Compass is a sophisticated private equity firm that admittedly "seeks to deploy over $100 million annually to acquire" distressed assets. Compass' principal place of business is 333 Seventh Avenue, 3rd Floor, New York, New York. Pathfinder's principal place of business is in Connecticut. Compass' principals, witnesses and documents are in New York. Both Pathfinder and Compass are citizens of New York. Neither Pathfinder nor Compass maintains an office in Nevada. Compass is represented by Milbank, Tweed, Hadley & McCloy LLP, which has more than 360 attorneys in New York alone. Clearly, New York is the more convenient forum.

### 4.    New York Is More Convenient For The Witnesses.

Compass's Motion does not address who are the most critical witnesses in Pathfinder's State Actions. Undoubtedly, they are Compass's management team and employees. David Blatt, the founder and manager of Compass and Cade Liu, another member of Compass's management team, are residents of New York. (Jessup Decl. Exs. C, D, E & F.) Boris Piskun, a member and manager of Compass, is a resident of New Jersey but works in New York. (Jessup Decl. Ex. G.) Blatt, Piskun and Liu are all key witnesses who are located in New York and New

Jersey.

Compass claims that Chris McKinney, a borrower under the Palm Harbor Loan, is in Florida. Compass misstates the nature of Pathfinder's claims. Pathfinder alleges that Compass breached contractual and fiduciary obligations in improperly servicing the Loans and putting Compass's interests ahead of Pathfinder's interests. Pathfinder's claims are not against any borrower for defaulting on the Loans. Indeed, asserting claims against borrowers for defaulting on the Loans is Compass' job, not Pathfinder's job, which Compass failed to do.

Compass's Motion identifies one witness, Chris McKinney, but fails to state what his testimony might be. "The party seeking the transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." Jenkins v. Wilson Freight Forwarding Co., 104 F. Supp. 422, 424 (D.N.Y. 1952) (denying motion to transfer venue on basis of convenience of witnesses because defendant failed to identify key witnesses and what their testimony would cover). By failing to identify witnesses and explain the nature of their potential testimony, Compass's Motion fails to meet the burden of proof.

### 5.    Availability Of Process To Compel The Attendance Of Witnesses.

Compass claims that the borrowers are "likely" to be witnesses because Pathfinder's claims purportedly concern Compass's communications with the borrowers. Compass misstates the nature of Pathfinder's claims. Pathfinder's claims arise out of the communications between Blatt, Piskun, Liu and other principals of Compass who conspired to put their interests ahead of the interests of Pathfinder and other lenders. Blatt, Piskun, and Liu work in New York and compulsory process against them are available in New York. Pathfinder's claims are not against any borrower for defaulting on the Loans. Compass's commissions and omissions in New York can and will be established through the testimony of Compass's managers and employees. The borrowers are not "likely" to be witnesses in the State Actions. Even if they are, the borrowers

certainly can be subpoenaed and deposed in their home states under Rule 45.

### 6.    The Physical Evidence Is Located In New York.

Compass admits that all the physical evidence is in New York, as Compass' principal

place of business is in New York.  This factor weighs heavily in favor of denying transfer.

### 7.    Familiarity Of The Court With The Applicable Law.

As explained in Part 2, supra, Pathfinder's tort claims are governed by New York law.

Even if Pathfinder's breach of contract claim is governed by Nevada law, New York courts are

likely to be more familiar with Nevada contract law than Nevada courts are familiar with New

York fiduciary and tort laws.  See Vassallo v. Niedermeyer, 495 F. Supp. 757, 760 (S.D.N.Y.

1980) (denying transfer and holding that the "fact that the law of another jurisdiction governs the

outcome of the case is a factor accorded little weight on a motion to transfer ... especially in an

instance such as this where no complex questions of foreign law are involved."); S-Fer Int'l, Inc.

v. Paladion Partners, Ltd., 906 F.Supp. 211, 214-16 (S.D.N.Y. 1995) (concluding that a forum

selection clause did not support transfer because that clause only governed claims to enforce

obligations of lease terms and not the tort claims at issue).

### 8.    The Interest of Justice, Including The Interests Of Trial Efficiency.

Even though (a) Pathfinder is a resident of New York, (b) Compass is a resident of New

York, (c) Compass's principals and witnesses are located in New York, (d) the physical evidence

(i.e., Compass's loan servicing records) is located in New York, (e) Pathfinder's choice of forum

is New York, and (f) New York has substantial interest in adjudicating disputes between its

citizens, Compass seeks to transfer the State Actions to Nevada District Court in order to

"consolidate" the State Actions with the Nevada Action, which effectively has been suspended

for the foreseeable future pending "finalization" of the settlement.

Compass claims that the State Actions and the Nevada Action involve the same claims,

parties, Asset Purchase Agreement and Plan, and may lead to "inconsistent results." As demonstrated in Part B-1, supra, Compass's claims are without merit. The Nevada Action involves nearly 100 parties and numerous claims and issues unrelated to the State Actions. Even if the State Actions and the Nevada Action involved the same claims and issues (and they do not), the adjudication of the State Actions is unlikely to lead to "inconsistent results" since a judgment in the State Actions will have collateral estoppel effect in the Nevada Action if, as Compass contends, both actions truly involve the same claims and issues. Moreover, the Nevada Action cannot lead to "inconsistent results" since that action has settled.

The Nevada District Court has a heavy docket compared to New York courts. If the State Actions are transferred and consolidated with the Nevada Action, which has been stayed for months due to the alleged misconduct of the Nevada Action plaintiffs and the "finalization of settlement," Pathfinder will be hindered from proceeding to trial in the State Actions. Transfer of the State Actions to Nevada will accomplish nothing except to confuse and delay the resolution of both actions.

## IV.    CONCLUSION

For the reasons stated, Pathfinder respectfully requests that the Court deny Compass' Motion to Transfer Venue and remand the State Actions to the Supreme Court of New York.

Dated: New York, New York.
July _11_, 2008

DLA PIPER US LLP

By:_____
Todd B. Marcus (TM-5404)
1251 Avenue of the Americas
New York, New York 10020
(212) 335-4500
Attorneys for Plaintiffs